JjfTOBIAS, Judge.
On 18 September 1998, defendant, Wilbert Richardson, Jr. (“Mr. Richardson”), was charged by bill of information with simple burglary in violation in La. R.S. 14:62. Mr. Richardson pled not guilty at his arraignment on 23 September 1998. On 16 October 1998, the trial court entertained a number of defense motions including a motion to suppress the evidence based on allegations of lack of probable cause. The trial court denied Mr. Richardson’s motion to suppress evidence on its finding that probable cause existed at the time of the search and arrest. After a jury trial on 3 December 1998, Mr. Richardson was found guilty as charged. On 12 December 1998, the trial court sentenced Mr. Richardson to serve twelve years at hard labor. On the same date, the State filed a multiple bill of information. A multiple bill and sentencing hearing was held on 14 January 2000. The trial court adjudicated Mr. Richardson to be a fourth felony offender, vacated the original sentence, and resentenced him to twenty years |3at hard labor. Mr. Richardson’s motion for appeal was granted on *1106 5 October 1999 and a return date of 18 December 1999 was set.

STATEMENT OF FACT

At approximately 4:40 a.m. on 10 August 1998, Officers Krekel Eckland and Richard Bonnet of the New Orleans Police Department were patrolling the area of Audubon and Olive Streets. They noticed an individual, subsequently identified as Mi*. Richardson, standing in a vacant lot handling some clothes. The officers had the opportunity to observe Mr. Richardson for a few moments before he noticed them. Upon seeing the officers, Mr. Richardson dropped the clothes and walked away at a fast pace. Based upon these actions, the officers believed that a crime was being or had been committed. They detained Mr. Richardson and questioned him about his activities. When Officer Bonnet asked what was he doing, Mr. Richardson stated that he was “just taking a leak.” Officer Eckland walked over to the area where the clothes were. He noticed security devices and name tags on the clothing indicating that the garments came from a store called “Simply Fashions.” Officer Eckland called headquarters and asked if any business burglaries had been reported while Officer Eckland confiscated the clothing and placed Mr. Richardson in the police vehicle. The officers and Mr. Richardson relocated to a store on Carrollton Avenue called Simply Fashions where a burglary was reported to have occurred. After speaking with one of the owners of the store, Officer Eckland determined that the clothes found in the vacant lot were the same clothes sold at Simply Fashions.
Officers Eckland and Bonnet positively identified Mr. Richardson at trial. They stated that on the night of the incident he was wearing a blue and Rwhite striped pullover shirt with a collar, blue jeans, a baseball cap, and white tennis shoes.
Officer Bonnet also testified that a bicycle was located near to where the defendant was first observed. The officers further stated that another individual found in the area was also detained and taken with Mr. Richardson to the scene of the burglary. Wfliile they were viewing the surveillance tapes, one of the police officers on the scene asked Officer Bonnet what they should do with the other individual. At that point, Mr. Richardson voluntarily stated “I was by myself. He wasn’t there.” After viewing the surveillance tape, Officer Bonnet noticed that Mr. Richardson was wearing the same clothing as the perpetrator in the surveillance tape. The other individual was released as he was much shorter than the perpetrator observed on the surveillance tape and he was not wearing clothing similar to that of the perpetrator.
Officer Patrick Conaghan of the New Orleans Police Department responded to the call of a burglary at Simply Fashions at approximately 3:00 a.m. on 10 August 1998. Upon arriving at the scene, he observed that the front glass door of the premises was smashed and lying inside the store. A large chunk of concrete was also on the floor. Clothes were knocked off the hangers. It appeared that someone had messed up the clothing. Officer Conaghan secured the scene and contacted the store’s management. An assistant manager, Aisha Herman, responded to his call. She confirmed that no one had permission to enter the store. While Officer Cona-ghan was still on the scene, another police unit arrived with a suspect in custody. Officer Conaghan viewed the store’s surveillance tape. The tape showed a black male wearing a baseball cap and a striped shirt, on a bicycle, in front of the store immediately before the window was smashed. Officer Conaghan | (¡testified at trial that Mr. Richardson was wearing the same baseball cap and striped shirt when he arrived at the scene with the other officers.
Lisa Thibodeaux, the store manager at Simply Fashions, was advised by Wells Fargo of a burglary at the store on the morning of 10 August 1998. Ms. Thibo-deaux testified at trial that the store had two surveillance video cameras — one pointed toward the cash register and the other *1107 the front door of the store. The tapes can run for up to thirty-six hours; however, a new tape is put in the camera each morning. Ms.- Thibodeaux identified the tape from 10 August 1998, at trial.
Aisha Herman, an assistant manager at Simply Fashions, wals also contacted by Wells Fargo and informed of the burglary on 10 August 1998. She went to the store in response to the call. When she arrived, she noticed that the front door had been smashed and that some clothing had been taken from the racks. She further identified the clothing found by Officer Eckland as belonging to the store. Ms. Herman viewed the surveillance tape and observed a man hitting the window with a rock. (The jury viewed the surveillance tape during Ms. Herman’s testimony as she narrated.) Ms. Herman noted and the videotape evidenced that the perpetrator was wearing a striped shirt, blue jeans and tennis shoes and showed the perpetrator entering the store.

ERRORS PATENT

A review of the record for errors patent reveals none.

ASSIGNMENT OF ERROR NUMBER 1

In his first assignment of error, Mr. Richardson contends that the State failed to produce sufficient evidence to support his conviction for simple burglary.
| (When assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 807, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987).`
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. La. R.S. 15:438 is not a separate test from Jackson, supra. Rather, it is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198, 1201 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. Jacobs, supra.
Simple burglary is the unauthorized entering of any structure with the intent to commit a felony or any theft therein. La. R.S. 14:62. Specific intent may be inferred from circumstances and the defendant’s actions. State v. Smith, 94-2588, p. 5 (La.App. 4 Cir. 3/27/96), 672 So.2d 1034, 1037. Credibility determinations are within the discretion of the trier of fact and are not disturbed unless clearly contrary to the evidence. State v. Vessell, 450 So.2d 938, 943 (La.1984).
In the case at bar, Officers Eckland and Bonnet testified that they found Mr. Richardson standing in an empty lot in possession of clothing with security tags and Simply Fashion labels on them. They later learned 17that there had been a burglary at the Simply Fashions store on Car-rollton Avenue. Ms. Herman, an assistant manager of the store, identified the clothes as taken from the store. The burglary was captured on one of the store’s surveillance tapes. The tape, which was played for the jury, showed a black male riding a bicycle past the front of the store immediately before the store’s front door was smashed with a piece of concrete. The videotape also shows the perpetrator entering the store. The perpetrator was wearing a baseball cap, a striped shirt, blue jeans and tennis shoes. Officers Bonnet and Conaghan testified that Mr. Richardson was wearing the same clothing on the night of the burglary. Officer Cona-ghan testified at trial that he identified Mr. Richardson as the perpetrator after *1108 viewing the videotape. Officer Conaghan stated that the identification was based on the fact that Mr. Richardson’s clothing matched the clothing of the perpetrator on the videotape. Mr. Richardson also implicitly admitted to the officers that he committed the burglary when he stated that he was at the store by himself.
Such testimony was sufficient for the ' jury to conclude that Mr. Richardson was guilty of simple burglary. The evidence presented by the State was sufficient to prove, beyond a reasonable doubt, that Mr. Richardson was the person who burglarized the Simply Fashions store.
This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER 2

Mr. Richardson also argues that the trial court erred when it denied his motion to suppress. Mr. Richardson suggests that Officers Eckland and Bonnet did not have reasonable cause to detain him.
A police officer has the right to detain briefly arid interrogate a person when the officer has a reasonable articula-ble suspicion that the person is, has been, or is about to be engaged in criminal conduct. La.C.Cr.P. art. 215.1; Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Tucker, 626 So.2d 707 (La.1993). “Reasonable suspicion” is something less than probable cause, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient facts within the officer’s knowledge to justify an infringement of the individual’s right to be free from governmental interference. State v. Robertson, 97-2960, pp. 2-3 (La.10/20/98), 721 So.2d 1268, 1269. Mere suspicious activity is not a sufficient basis for police interference with an individual’s freedom. State v. Williams, 421 So.2d 874, 876 (La.1982). However, for a stop, the level of suspicion need not rise to the probable cause needed for a lawful arrest. State v. Huntley, 97-0965, p. 3 (La.3/13/98), 708 So.2d 1048, 1049. The totality of the circumstances must be considered in determining whether reasonable suspicion exists. State v. Belton, 441 So.2d 1195, 1198 (La.1983), cert. denied, Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984).
In the case at bar, Officers Eckland and Bonnet testified that they were on patrol in the early morning hours of 10 August 1998 when they observed Mr. Richardson standing in an empty lot looking through a pile of clothes. When the officers approached Mr. Richardson, he told them that the clothes were not his and that he was “just taking a leak.” The officers noticed that the clothes had security tags and Simply Fashions labels on them. Thus, at that time, the- officers had reasonable cause to believe that Mr. Richardson was at least involved in the crime of possession of stolen property.
Mr. Richardson also argues that the police did not have probable cause to arrest him. Probable cause to arrest exists when the facts and circumstances, either personally known to the arresting officer or of which | flhe has reasonable and trustworthy information, are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. State v. Thomas, 349 So.2d 270, 272 (La.1977). The standard for assessing probable cause is an objective standard that must withstand the “detached, neutral scrutiny of a judge.” State v. Flowers, 441 So.2d 707, 712 (La.1983), rev’d on other grounds, 779 F.2d 1115 (5 Cir.1986). The determination of probable cause must take into account the “practical considerations of everyday life on which ... average police officers can be expected to act.” State v. Raheem, 464 So.2d 293, 296 (La.1985).
After detaining Mr. Richardson, the officers learned of a burglary at a nearby business known as Simply Fashions. The officers took Mr. Richardson with them when they relocated to the store. The officers spoke with Officer Conaghan who was already at the store and learned of the store’s surveillance cameras. Officers Bonnet and Conaghan reviewed the surveillance tape. The videotape showed a *1109 black man riding a bicycle past the front of the store immediately before the store’s front door was smashed with a piece of concrete. The videotape also showed the perpetrator entering the store. The perpetrator was wearing a baseball cap, a striped shirt, blue jeans and tennis shoes. Officers Bonnet and Conaghan noted that Mr. Richardson was wearing the same clothing as the perpetrator. At that point, the officers had probable cause to arrest Mr. Richardson for the burglary of Simply Fashions given that he was found in possession of the stolen clothes and was wearing clothing identical to the perpetrator’s clothing.
This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER 3

Mr. Richardson further contends that the trial court erred when it adjudicated him a fourth felony offender. He argues that the State did not Improve that the guilty pleas to the predicate offenses were knowingly and voluntarily made.
In State v. Shelton, 621 So.2d 769, 779-780 (La.1993), the Louisiana Supreme Court revised the previous scheme of burdens of proof in habitual offender proceedings, as follows:
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a “perfect” transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers. If the State introduces anything less than a “perfect” transcript, for example, a guilty plea form, a minute entry, an “imperfect” transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that defendant’s prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boy-kin rights.[1]
At the multiple bill hearing the State produced evidence of guilty pleas in two of the three predicate offenses. Mr. Richardson pled guilty to possession of cocaine in 1992 and possession of stolen property in 1989. He was found guilty as charged to simple burglary in 1979. The plea forms are initialed and signed in the appropriate places by Mr. Richardson, the judge, and Mr. Richardson’s counsel. In each form Mr. Richardson specifically acknowledged that he was waiving his right to trial by jury, right to confront his accusers, and his right against self-incrimination. Moreover, the docket |1Tand minute entries memorializing the guilty pleas indicate that Mr. Richardson “appeared attended by counsel.” Thus, the State met its initial burden under Shelton to prove the existence of the guilty pleas and that the defendant was represented by counsel. The documents also revealed that the trial court advised Mr. Richardson of his Boy-kin rights prior to accepting the guilty pleas. As the State met its burden, Mr. Richardson then bore the burden of producing some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. Mr. Richardson has not produced any evidence in support of his argument.
This assignment is without merit.

*1110
ASSIGNMENT OF ERROR NUMBER 4

Mr. Richardson makes a novel argument that the State should not be permitted to use his prior convictions to enhance the present sentence since these prior convictions had been used to enhance other prior convictions. Mr. Richardson’s argument, while interesting, has no basis in Louisiana law. The multiple offender statute was designed specifically to handle recidivists and contains no prohibitions against using prior convictions more than once to enhance a defendant’s sentence.
This assignment is without merit.

ASSIGNMENTS OF ERROR NUMBERS 5 AND 6

After this matter was submitted for decision by this court, Mr. Richardson filed a pro se supplemental brief asserting two new assignments of error, both interrelated.
His first pro se assignment (which we designate as number 5) asserts that his present conviction and sentence pursuant to the Habitual Offender Law is illegal and unconstitutional because it is an ex post facto application ofj^the law. His second pro se assignment (which we designate as number 6) is that his counsel’s failure to raise the ex post facto argument constitutes ineffective assistance of counsel.
As a matter of the rules of the Courts of Appeal, this court is not required to address either of these untimely assignments of error. However, in the interest of justice and to pretermit the consideration of the issues at a later date, we address them in our present opinion.
Essentially, Mr. Richardson argues that the cleansing periods of his prior convictions under La. R.S. 15:529.1 were shorter at the time he was convicted of the prior offenses and thus, because of legislative amendments to La. R.S. 15:529.1 increasing the cleansing period, application of the lengthier cleansing periods to his present underlying conviction and sentence is an ex post facto application of the law to him.
The cleansing period of ten years of La. R.S. 15:529.1 in effect at the time Mr. Richardson committed his most recent crime (simple burglary) controls the penalties that the trial court must apply to the conviction on the multiple bill. The conviction of a prior crime imparts no vested right in the convicted person to a lesser cleansing period should he or she commit another crime for which he or she is multi-' pie billed. Thus, the law relating to ex post facto never becomes relevant. That is, the applicable enhancement statute is the one existing at the time of the commission of the offense for which the sentence is to be enhanced. State v. Rolen, 95-0347 (La.9/15/95), 662 So.2d 446; State v. Carr, 96-2388 (La.App. 4 Cir. 9/10/97), 699 So.2d 1105, writ denied, 97-2633 (La.2/6/98), 709 So.2d 732.
The first pro se assignment is without merit.
I ^Similarly, the failure of counsel to raise a meritless argument of error cannot be ineffective assistance of counsel. Accordingly, the second pro se assignment of error is without merit.

CONCLUSION

Accordingly, the defendant’s conviction and sentence are affirmed.
AFFIRMED.

. In Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) the United States Supreme Court emphasized three federal constitutional rights which are waived by a guilty plea: the, privilege against self-incrimination; the right to trial by jury; and the right to confront one’s accusers.