802 So.2d 887 (2001)
STATE of Louisiana
v.
Karen VINGLE.
No. 2001-KA-0840.
Court of Appeal of Louisiana, Fourth Circuit.
November 21, 2001.
*888 Harry F. Connick, District Attorney, Juliet Clark, Assistant District Attorney, New Orleans, LA, Counsel For Plaintiff/Appellee.
Bernard J. Bagert, Jr., The Bagert Law Firm, New Orleans, LA, Counsel For Defendant/Appellant.
Court composed of Judge STEVEN R. PLOTKIN, Judge PATRICIA RIVET MURRAY and Judge MICHAEL E. KIRBY.
MICHAEL E. KIRBY, Judge.

STATEMENT OF THE CASE:
On December 16, 1999, the defendant was charged by bill of information with possession of heroin, La. R.S. 40:966, possession of cocaine, La. R.S. 40:967, and possession of diazepam, La. R.S. 40:969. She was arraigned and pled not guilty on September 21, 2000. She filed a motion to suppress which was denied November 9, 2000. She pled guilty to attempted possession on all three counts pursuant to State v. Crosby, 338 So.2d 584 (La.1976). On December 14, 2000, she was sentenced to two years at hard labor without benefit of parole, probation, or suspension of sentence on the attempted possession of heroin, and two years at hard labor on the other counts. All sentences were ordered to be served concurrently. She filed a motion for appeal.

FACTS:
Officer Harry O'Neal said that on October 1997 at 10:00 a.m., he was on patrol in the 1200 block of Eagle Street. He and his partner were in a marked car. They observed a red Mustang cross from Jefferson to Orleans Parish in an area of town known as Pidgeon Town. The defendant, a white female, pulled into the "area" of Robert "Black" Ward, a known heroin dealer. The car pulled over in front of his house, and O'Neal noticed that there was a temporary license plate in the rear window. The officers were investigating an individual who was selling temporary license plates in the neighborhood. Because of that fact, and the fact "that it was a white woman stopping in that block with no apparent car trouble", the officers "elected to stop the vehicle." They ordered the defendant out of the car. She was asked to produce her driver's license and registration. She told the officers that the car was a rental car. She appeared nervous. Her hands were shaking *889 and her voice was trembling. O'Neal reached into the car, grabbed her purse, and felt that there were no weapons in it. He ordered her to open the purse. At that point, the defendant turned away from him so that he could not see the contents of the purse. The officer "turned her around" and saw a syringe and cooker inside the purse. She was arrested and handcuffed. The officer then found half of a valium tablet in her purse. He could see fresh track marks on the defendant's arms. The officers searched the car, which was indeed a rental car, and found another syringe and cooker.
On cross, O'Neal testified that the area is often used by people to cross from Jefferson to Orleans Parish. He said that it was not uncommon to find white people using the area, or to see temporary tags. He agreed that Eagle Street is often used because it does not have stop signs. He said however that his suspicions were aroused because the defendant turned onto Oak and pulled in front of the dealer's house. He said the person who had been selling the temporary tags was about six blocks from where the defendant was stopped. The defense later re-called O'Neal who said that the nearby area of Oak Street is commercial.
The defense called Officer Andrew Roccaforte who said the defendant was stopped September 23, 1997, as she pulled off of Willow Street onto Eagle. He said she drove about one hundred and fifty feet before she was stopped. She was stopped because "it's very common for white individuals to come into that area to purchase narcotics, and also, the vehicle was equipped with a temporary license tag and we had numerous photocopied bogus tags in that area that were being used by motorists." He said that the police car was immediately following the defendant and that she pulled over. Had the defendant been driving through the area, she would not have been stopped because it is an area used to travel to Jefferson Parish, but in this case she turned into the neighborhood. He said that the car indeed was a new rental car that would have commonly had temporary plates. After the arrest, the car was locked, secured, and left behind, even though the area was "terrible."
Both officers said the defendant was the only person in the car.
Steve Williams said that he was in the car with the defendant when it was stopped, and that she was driving him to the funeral of a friend. He said that the defendant did not stop the car, but that in fact one police unit pulled in front of the car, and the other behind it. An officer immediately ordered the defendant out of the car, took her purse, emptied its contents on the hood of the car, and handcuffed her. He said that the officers asked him if he had anything on him and he gave them a needle and a spoon he had in a sunglass case under the front passenger seat. The officers let him drive the car off.
The defendant's husband said that he had rented the car and that the defendant was indeed in transit to a funeral.
The defendant said she was on the way to the funeral when she remembered a friend might have wanted to go with her. She turned into the neighborhood to turn around. She was immediately surrounded by police cars. An officer asked for her license. She had just gone to the bank and could not remember where she had put her license. She was nervous and fumbling. An officer then dumped the contents of her purse onto the hood of the car.

ASSIGNMENT OF ERROR:
The defendant argues the trial court erred in denying her motion to suppress the evidence.
*890 A law enforcement officer may stop a person in a public place whom he reasonably believes is committing, has committed, or is about to commit an offense. La.C.Cr.P. Art. 215.1. "Reasonable suspicion" for an investigatory stop is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient articulable facts within his knowledge to justify an infringement of the suspect's rights. State v. Matthews, 94-2112 (La.App. 4 Cir. 4/26/95), 654 So.2d 868; State v. Vance, 93-1389 (La.App. 4 Cir. 2/25/94), 633 So.2d 819. In assessing the reasonableness of an investigatory stop, the court must balance the need to search and seize against the invasion of privacy the search and seizure entails. State v. Tucker, 604 So.2d 600 (La.App. 2 Cir.1992); State v. Washington, 621 So.2d 114 (La.App. 2 Cir.1993). The intrusiveness of a search is not measured so much by scope as it is by whether it invades an expectation of privacy that society is prepared to recognize as reasonable. Twenty-Three Thousand Eight Hundred Eleven and No/100 ($23,811) Dollars in U.S. Currency v. Kowalski, 810 F.Supp. 738 (W.D.La.1993).
In reviewing the totality of circumstances, the officer's past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable. State v. Jackson, 26,138 (La.App. 2 Cir.1994), 641 So.2d 1081. The reputation of an area is an articulable fact upon which an officer can rely and which is relevant in the determination of reasonable suspicion. State v. Richardson, 575 So.2d 421 (La.App. 4 Cir. 1991). Flight, nervousness, or a startled look at the sight of a police officer may be one of the factors leading to a finding of reasonable cause to stop under La.C.Cr.P. art. 215.1. State v. Belton, 441 So.2d 1195 (La.1983); State v. Noto, 596 So.2d 416 (La.App. 4 Cir.1992); State v. Preston, 569 So.2d 50 (La.App. 4 Cir.1990).
In State v. Ricard, 94-0975 (La.App. 4 Cir. 7/14/94), 640 So.2d 880, the defendant appeared to be intoxicated in a high crime area and ignored the officers' order to stop. The defendant clenched his hand and attempted to put it into his coat pocket. Believing that the defendant was reaching for a gun, an officer grabbed the defendant's hand and opened it, finding a cocaine pipe. This court found that the officers articulated specific reasons for suspecting that the defendant had a weapon, and the evidence was legally seized.
In State v. Ganier, 591 So.2d 1328 (La. App. 4 Cir.1991), police officers were patrolling a housing project in New Orleans known to be a center of drug trafficking. The defendant saw the officers, turned "suspiciously", began to walk away slowly, and then began to run. The officers chased the defendant until he was apprehended. This court found that two factors were sufficient to justify a stop of the defendant: the area's reputation for drug trafficking, and the suspicious actions of the defendant. This court noted:
... Drug activity and crimes which it generates have become a major problem endangering innocent people and severely taxing police resources. Although an innocent individual who has nothing to hide from police might flee so that such flight would be irrational, the action of fleeing in itself is inherently suspicious and justifies an investigation by a police officer exercising common sense. This is not a case of a man merely standing on a street corner who is detained by the police simply because he is there.
State v. Ganier, 591 So.2d at 1330.
In State v. Hall, 581 So.2d 337 (La.App. 3 Cir.1991), in a high crime area at approximately *891 4:00 a.m. an officer observed three subjects standing on a corner. As he was alone, the officer began to pat down the subjects before conducting interviews "pretty much agreed to" by the three subjects. As the officer started to pat down one person, he noticed that a female subject kept placing her hand in her left pocket and was "sort of evading him" by stepping away. The officer patted down the female, checking for a gun. When he felt a sharp object in her pocket, he retrieved four hypodermic needles, and arrested the female. The appellate court found that the stop and frisk were justified based on the reasonable suspicion that the defendant was reaching for a weapon. Under La.C.Cr.P. art. 215.1, the officer was authorized to stop and frisk the defendant based on the high crime area, the defendant's evasive conduct, and her reaching into her pocket possibly to retrieve an unknown object. The evidence was properly seized.
The above cited cases address the extent to which presence in a high crime area contributes to a finding of reasonable suspicion. The cases all deal with pedestrian stops. Turning to a case of a car stop, as in the instant case, in State v. Robertson, 721 So.2d 1268 (La.1998), the Louisiana Supreme Court found no reasonable suspicion. An officer received an anonymous phone call from a concerned citizen. The caller said that "Will" drove a dark green Pontiac Grand Am with dark tinted windows and was involved in the narcotics trade in the Magnolia Project. The caller gave a description of the defendant and said where the car was parked when not being used to deliver drugs. The officers went to the location and saw the car. While they were setting up a surveillance, they observed the vehicle drive away. When the car parked, the driver exited and matched the given description. The officers approached and asked the defendant his name, and he responded William Robertson. The officer informed him that he was under investigation for narcotics. A canine unit arrived at the scene ten to fifteen minutes later. When the dog found the drugs, the defendant was arrested. This court denied writs. State v. Robertson, 97-1950 (La.App. 4 Cir. 11/5/97, 701 So.2d 272), unpub. (JJ.Schott, Ciaccio). Judge Murray dissented finding that there was no verification of the tipster's reliability, no observation of any suspicious actions, and insufficient corroboration under Alabama v. White. The Supreme Court reversed:
In the instant case, it is true that the officers were able to corroborate certain aspects of the anonymous tip, including defendant's name, his physical description and the location of the described vehicle. The tip, however, contained no predictive information from which the officers could reasonably determine that the informant had "inside information" or a "special familiarity" with defendant's affairs. In particular, the tip failed to predict the specific time period in which defendant would be engaged in illegal activity. It simply stated that drugs would be in the vehicle when not parked at a certain location. Because it is likely that defendant's use of the vehicle included non-illegal activity, the allegation that defendant would be engaged in illegal activity whenever the vehicle was moving was far too general. Since the tip did not provide sufficiently particular information concerning defendant's future actions, an important basis for forming reasonable suspicion was absent. The officers, therefore, lacked reasonable grounds to believe that the informant possessed reliable information about defendant's alleged illegal activities.

*892 We note that the police were not powerless to act on the non-predictive, anonymous tip they received. The officers could have set up more extensive surveillance of defendant until they observed suspicious or unusual behavior. Furthermore, if, after corroborating the readily observable facts, the officers had noticed unusual or suspicious conduct on defendant's part, they would have had reasonable suspicion to detain him. These circumstances, however, were not present here. In the absence of any suspicious conduct or corroboration of information from which police could conclude that the anonymous informant's allegation of criminal activity was reliable, we must conclude that there was no reasonable suspicion to detain defendant. The trial judge erred in holding otherwise.
Robertson, 721 So.2d at 1270-1271.
In this case, the trial court found the officers' testimony more credible than the defendant's or Williams's. Even taking the police officers' story as the true course of events, there was no evidence of evasive conduct on the part of the defendant. She did not appear intoxicated. She was simply driving through a neighborhood in the broad daylight at 10:00 a.m. She pulled over when a police car appeared behind her, was stopped, and ordered out of the car. She did not attempt to flee, and she did not disobey an order to stop. There was no testimony that she made any furtive movements such as trying to hide something under the seat. Before being stopped, she did not appear nervous or give a startled look. At the time of the stop, there was no evidence of a gun and no evidence of paraphernalia. There was no tip from any informant that she was engaged in any suspicious behavior at all. As such, there could be no corroboration. The officers stopped the defendant for two simple reasons: she was a white woman in a black neighborhood, and she was driving a brand new car with temporary plates.
The trial court found reasonable suspicion based on these two facts. In State v. Blasio, 98-0077 (La.App. 4 Cir. 7/21/98), 720 So.2d 749, 750, the facts of the case were:
Deputies Ruiz and Letort while on patrol on Judge Perez Drive in St. Bernard Parish saw the defendant, a Caucasian, walking northbound at 2:18 a.m. in the 2500 block of Walkers Lane, a predominantly black area known for drug trafficking. The officers decided to stop the defendant and ask him for identification. As they were slowing the patrol car, they noticed he had placed something in the left pocket of his shirt. The officers stopped the defendant, placed him against the patrol car and frisked him but found no weapons or drugs during the patdown. They asked the defendant what he had put in his shirt pocket. He then took a plastic wrapping from a cigarette pack from the pocket. The plastic wrap contained four pills, which the defendant said belonged to his mother. Deputy Letort testified at the motion to suppress hearing that the defendant was advised of his right to remain silent before he spoke to the officers. Deputy Ruiz testified at the preliminary hearing as to the facts stated above. However, on cross-examination he acknowledged that when he first saw the defendant, the defendant was walking by himself, had not come out from any house and had no contact with anyone on the street. He also acknowledged that there was no one else in the immediate area when the two officers approached the defendant. At the motion to suppress hearing, Deputy Letort testified as to the aforementioned facts. On cross-examination he stated that he *893 and Deputy Ruiz stopped the defendant because he was walking in a predominantly black neighborhood known for heavy drug trafficking. He also stated that they saw no transactions taking place. He acknowledged that they decided to stop the defendant prior to seeing him reach to his shirt pocket because he was in a high drug trafficking area.
Blasio, 720 So.2d at 750.
This court reversed the trial court's finding of reasonable suspicion with little discussion:
A stop in which a defendant is merely walking in a high crime area is unjustified. State v. Ellington, 96-0766 (La. App. 4 Cir. 9/4/96), 680 So.2d 174; State v. Williams, 621 So.2d 199 (La.App. 4 Cir.1993); State v. Williams, 572 So.2d 756 (La.App. 4 Cir.1990), writ denied, 576 So.2d 30 (La.1991); and State v. Stan, 97-2195 (La.App. 4 Cir. 10/29/97), 703 So.2d 83, writ denied, 97-2852 (La.2/18/98), 709 So.2d 762.
In this case, neither police officer could articulate a reason for suspecting the defendant of criminal activity. In view of this, and the fact that there was absolutely no one else around and nothing taking place in the area when the officers decided to stop the defendant, it is clear that the stop was unlawful and the trial judge erred in concluding otherwise. Nonetheless, once the officers detained the defendant, frisked him and found no weapons, he should have been free to leave. The officers gave no reason for the continued detention and questioning. Because the initial stop and frisk were invalid, seizure of the contraband was unlawful.
Blasio, 720 So.2d at 750.
After Blasio, the Louisiana Supreme Court recently reversed this court's affirmation[1] of the trial court's granting of a motion to suppress in a case of racial profiling. In State v. Wilson, 00-0178 (La.12/8/00), 775 So.2d 1051, the court stated:
We agree with the court of appeal that "the fact a white man is walking in a predominantly black high crime or drug trafficking area does not constitute reasonable cause to stop him." Wilson, 99-2392 at 7. See United States v. Bautista, 684 F.2d 1286, 1289 (9th Cir.1982) ("Race or color alone is not a sufficient basis for making an investigatory stop.") (citing United States v. Brignoni-Ponce, 422 U.S. 873, 886-87, 95 S.Ct. 2574, 2582-83, 45 L.Ed.2d 607 (1975)). Officer Michael Glasser was therefore not entitled to act solely on the basis of his "extensive experience in purchasing narcotics" in the area of the Iberville Housing Project in New Orleans, "that it's an unfortunate but a common occurrence that white people will go into the [area] in an effort to try to obtain contraband that they cannot get elsewhere, or feel that they can't get elsewhere."
However, the officer made clear in his testimony at the suppression hearing that while racial incongruity "did factor in," he considered other circumstances more important in his decision to make an investigatory stop. Glasser had turned the corner at North Villere and Canal streets in New Orleans shortly after midnight when he observed the defendant crouching by the driver's door of a car parked at the curb. The vehicle's driver sat at the wheel across from the defendant. Alerted by the headlights of Glasser's marked police unit, both men looked up. The defendant immediately backed away from the car *894 parked at the curb, jammed his hands into his jacket pockets, and began walking away as the vehicle turned from the curb and attempted to reenter traffic. Glasser had "purchased drugs in an undercover capacity several hundred times from that immediate area," and over the course of 20 years had made "several hundred arrests [of] people in that area who have gone there expressly to purchase cocaine, or crack cocaine, or people who have sold crack cocaine to individuals who have come there for that express purpose." Based on this experience, Glasser concluded that he had interrupted a drug transaction and detained both the defendant and the driver of the car. Upon frisking the defendant for weapons, Glasser felt through the thin material of defendant's nylon jacket "what appeared to be a bag of small rock-like objects." The officer testified at the hearing that he knew immediately from his long experience in the field that the package contained rock cocaine for retail sale on the streets, removed it from defendant's pocket, and placed the defendant under arrest. In a search incident to that arrest, the officer recovered a wad of currency from defendant's pocket and found 14 more pieces of rock cocaine.
Under these circumstances, the trial court erred in granting the defendant's motion to suppress. This Court has emphasized that in assessing whether the police had reasonable grounds to make an investigatory stop, "[a] reviewing court must take into account the `totality of the circumstancesthe whole picture,' giving deference to the inferences and deductions of a trained police officer `that might well elude an untrained person.'" State v. Huntley, 97-0965 (La.3/13/98), 708 So.2d 1048, 1049 (La. 1998) (quoting United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). Because reasonable suspicion for an investigatory stop need not rise to the level of probable cause for an arrest, the police require only "`some minimal level of objective justification ...'" to intrude on an individual's right to remain free from governmental interference. Huntley, 708 So.2d at 1049 (quoting United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989)).
In the present case, the lateness of the hour, the location of the car near a project known to the officer from extensive personal experience as a high narcotics trafficking area frequented by individuals living outside of the neighborhood, and the attempt of both men to avoid the police presence immediately upon sight of the officer gave Glasser an articulable and minimal objective basis for suspecting that he had interrupted a drug transaction and for stopping both individuals. See State v. Williams, 421 So.2d 874, 876 (La.1982) ("[G]iven the sudden departure of the trio at the approach of the police, given the furtive gesture of one of them and the coincident attempt at departure by defendant in his vehicle, the officers' hunch flowered into reasonable suspicion, based on articulable facts...."). Glasser had observed the defendant place both hands in his jacket as he attempted to walk away and the officer was fully acquainted with the "close association between narcotics traffickers and weapons." See United States v. Trullo, 809 F.2d 108, 113-14 (1st Cir. 1987) ("[T]o substantial dealers in narcotics, firearms are as much `tools of the trade' as are most commonly recognized articles of drug paraphernalia.") (internal quotation marks and citation omitted). Glasser therefore had a articulable and objectively reasonable basis *895 for conducting a self-protective search of the defendant's outer clothing for weapons. La.C.Cr.P. art. 215.1; Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968). The officer's "plain feel" through defendant's thin nylon jacket of the cocaine packet, which Glasser immediately identified on the basis of his long experience in the field, then gave him probable cause to seize the packet and to arrest the defendant. Minnesota v. Dickerson, 508 U.S. 366, 369-70, 113 S.Ct. 2130, 2137, 124 L.Ed.2d 334 (1993) ("If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.") (footnote omitted); United States v. Proctor, 148 F.3d 39, 43 (1st Cir.1998) (Upholding plain-feel seizure of glassine envelope filled with marijuana on the basis of police officer's testimony "that he was consistently able to determine the feel of marijuana from conducting numerous pat-downs of suspects.").
State v. Wilson, 775 So.2d at 1052-1053.
This case does not reach the facts of Wilson. The event did not take place at a late hour. It in fact happened at 10:00 a.m., near a commercial or retail area of the city in a neighborhood used by many white people to pass between Jefferson and Orleans parishes. There was no attempt on the part of the defendant to avoid police presence.
The only additional fact cited by the officers and the trial court for the stop was that the car had a temporary license plate. The car was, however, brand new, explaining the temporary license plate.

CONCLUSION:
The trial court erred in finding that the officers had reasonable suspicion to stop the car. We reverse the denial of the motion to suppress. Likewise, we reverse the convictions and sentences.
REVERSED
NOTES
[1] State v. Wilson, 99-2392 (La.App. 4 Cir.12/22/99), 759 So.2d 351 (unp'd)