925 So.2d 577 (2006)
STATE of Louisiana
v.
Alvin HANDY.
No. 2005-KA-0811.
Court of Appeal of Louisiana, Fourth Circuit.
January 18, 2006.
*578 Eddie J. Jordan, Jr., District Attorney, Yolanda J. King, Assistant District Attorney, New Orleans, LA, for Plaintiff/Appellee.
Pamela S. Moran, Louisiana Appellate Project, New Orleans, LA, for Alvin Handy/Appellant.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge CHARLES R. JONES, and Judge EDWIN LOMBARD).
CHARLES R. JONES, Judge.
Alvin Handy appeals his conviction and sentence for being a convicted felon in possession of a firearm. We affirm.
The State of Louisiana charged Alvin Handy by bill of information with one count of violating La. R.S. 14:95.1, possession of a firearm by a convicted felon. *579 Handy appeared before the district court for arraignment and pled not guilty to all charges. The district court heard and denied his motion to suppress the evidence.
On the day of trial, the State amended the charge to reduce it to La. R.S. 14:27:95.1, attempted possession of a firearm by a convicted felon. Handy elected to plead guilty to the reduced charge, and the district court accepted his plea pursuant to State v. Crosby, 338 So.2d 584 (La. 1976), reserving to Handy the right to appeal the court's denial of his motion to suppress the evidence. Handy waived delays for sentencing, and the district court sentenced him to credit for time served, which in Handy's case amounted to seven months in jail. Further, Handy filed a motion for appeal, and the district court appointed the Louisiana Appellate Project to act as Handy's appeal counsel.
The State presented the testimony of one witness at the hearing on Handy's motion to suppress the evidence. Specifically, Detective Nicole McCaskill, a New Orleans Police Officer assigned to the Second District Investigations Unit, testified that on June 11, 2004 at 2:30 p.m. she was patrolling the Second District's Zone "Q" in the 3500 block of Octavia Street. Officer McCaskill further testified that while in the 3500 block of Octavia Street she observed Handy standing in front of a yard, bending over and looking at a lawn mower. The officer also noticed a bicycle next to Handy to which a dolly, or hand truck, had been tied. Officer McCaskill testified that she decided to stop and speak with Handy in light of the fact that the area surrounding the scene had been experiencing a problem with burglaries of sheds and theft of lawn equipment.
Officer McCaskill testified that she got out of her vehicle and asked Handy what his intentions were regarding the lawn mower. Officer McCaskill explained that the lawn behind Handy was freshly cut so she thought he might be cutting the grass. Officer McCaskill testified that Handy responded by saying that he thought the lawn mower had been left on the curb for trash. Officer McCaskill then asked Handy for his identification. Handy was unable to produce any identification to Officer McCaskill. Officer McCaskill then asked Handy why he was on the scene and to whom did the lawn mower belong. According to Officer McCaskill, Handy again responded by stating that he did not know who the owned the lawn mower and that he thought the lawn mower was trash. According to Officer McCaskill there was no trash on the curb for pickup in front of the house at the scene or in front of any of the other neighboring houses. Officer McCaskill further testified:
He was acting kind of nervous, moving around, so for officer's safety, I patted him down. He had nothing in his pockets, that I felt, but I realized that he had a backpack on his back that appeared to be empty, but when I patted it down, I immediately recognized a handgun. It felt like a handgun in the backpack. I removed the backpack off his back and immediately put him in handcuffs and asked for another unit to come out.
The following colloquy regarding the pat down occurred during the defense counsel's cross-examination of Officer McCaskill:
A. Well, at every stop, any stop that I conduct, I fear for my safety.
Q. I know, but objectively in this situation, he was not an overt threat to you in any way, as [sic] he?
A. No.
Officer McCaskill testified that after the other police unit arrived she and the other officer opened the backpack and found a *580 small handgun. Officer McCaskill then placed Handy in the back of one of the police units. Officer McCaskill next spoke with the individual whose yard Handy was in at the time of the stop. According to Officer McCaskill, the individual stated that the lawnmower found with Handy did not belong to her. Officer McCaskill also testified that the individual claimed to have been working in her yard approximately thirty minutes beforehand but that the lawnmower found with Handy had not been there at the time. To make sure that the lawnmower found with Handy did not belong to her, the individual went into her own backyard and checked to see if her lawnmower was still there. Officer McCaskill further testified that this individual stated that her trash pickup was on Thursday morning. June 11, 2004, the day of the incident, was a Friday. Officer McCaskill also knocked on other doors in the neighborhood as part of her investigation, but no one responded to her knocks.
Officer McCaskill had the other police unit on the scene with her run a computer check on Handy. The computer check revealed that Handy was a convicted felon. The record reflects that Handy was convicted in 1998 for simple burglary. After Officer McCaskill learned of Handy's prior felony conviction she transported him to the Second District station and requested that an agent from the Federal Bureau of Alcohol, Tobacco and Firearms interview Handy.
Handy asks this Court to review the record for errors patent. A review of the record reveals no errors patent.
Handy contends that his conviction and sentence should be reversed because the district court erred by declining to suppress evidence from the police officer's investigatory stop of Handy. Significantly, Handy does not contest Officer McCaskill's pat down search of his body or backpack. Rather, he contends that Officer McCaskill did not elucidate sufficient articulable knowledge of particular facts and circumstances surrounding the matter at hand to justify an investigatory stop. While not stated plainly, Handy's brief assumes that Officer McCaskill conducted an investigatory stop of Handy when she stopped and got out of her police unit, approached Handy, and asked him what he was doing with the lawnmower.
For example, page five of Handy's brief states plainly that Officer McCaskill's "stop" was premised on nothing more than: (1) her knowledge that the area surrounding the scene had been experiencing burglaries of lawn equipment and shed items; and, (2) her observation of Handy bending down over a lawnmower on the curb while standing next to a bicycle with an attached dolly/hand truck. Handy thus asserts that Officer McCaskill's "generalized suspicion" about his actions did not constitute a reasonable suspicion sufficient to justify her investigatory stop. He argues that Officer McCaskill conducted a "stop" when she approached him and initiated conversation. He urges this Court to reverse the district court's denial of his motion to suppress as well as his conviction and sentence.
The State responds to Handy's arguments by first interposing a jurisdictional objection to Handy's appeal. The State asserts that Handy failed to object to the district court's denial of his motion to suppress at the time of the court's ruling. In direct response to Handy's appeal, the State argues that the district court properly denied the motion to suppress because exigent circumstances existed that justified Officer McCaskill's investigatory stop and pat down search of Handy.
We will first address the State's procedural objection, and will then address Handy's assignment of error.
*581 The record indicates that the district court denied Handy's motion to suppress. On the date of trial, the district court allowed Handy to enter a conditional plea of guilty and retain the right to contest the court's ruling on the motion to suppress the evidence.
The State fails to provide this Court with any law in support of its contention that Handy cannot pursue the present appeal because his trial counsel failed to make a contemporaneous objection to the court's denial of his motion to suppress. The State's support of its argument applies to district court rulings made at trial instead of at pre-trial motion practice. Additionally, there is no caselaw to support the State's jurisdictional objection. Moreover, the record indicates that the State failed to make a contemporaneous objection to Handy's Crosby plea. Accordingly, this argument by the State is without merit.
As previously noted, Handy argues that Officer McCaskill conducted an investigatory stop when she approached him and initiated conversation. He essentially argues that the motion to suppress should have been granted because Officer McCaskill's initiation of conversation was not based on reasonable suspicion that Handy had committed, was committing, or was about to commit a crime.
La.C.Cr.P. art. 215.1 provides for the right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct. See also Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). However, an officer's right to make an investigatory stop of a particular individual must be based upon reasonable cause to believe that the suspect had been, is, or is about to be engaged in criminal conduct. La.C.Cr.P. art. 215.1.
For purposes of an investigatory stop and detention for interrogation, "reasonable cause" is something less than probable cause and must be determined under the facts of each case considering whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from governmental interference. State v. Albert, 553 So.2d 967 (La.App. 4 Cir.1989). The totality of circumstances must be considered in determining whether or not reasonable cause exists. Further, to assess the reasonableness of an officer's conduct, it is necessary to balance the term of invasion against the need to search or seize. State v. Scott, 561 So.2d 170 (La.App. 1st Cir.1990), writ denied, 566 So.2d 394 (La.1990). Although flight, furtive gestures, nervousness, or startled behavior at the sight of a police officer, is, by itself, insufficient to justify an investigatory stop, this type of highly suspicious conduct may be a factor leading to a finding of reasonable cause. State v. Carver, 531 So.2d 551 (La.App. 5 Cir.1988).
In this case, Officer McCaskill's uncontradicted testimony was that she stopped and exited her vehicle and asked Handy what he was doing with the lawnmower. Officer McCaskill did not order Handy to submit to her authority. She did not order him to stop what he was doing. Rather, it was Officer McCaskill who stopped and spoke with Handy. There is nothing in the record to suggest that Handy was prevented from walking away or disregarding Officer McCaskill's questions.
As this Court stated in State v. Bentley, 97-1552, p. 8 (La.App. 4 Cir. 10/21/98), 728 So.2d 405, 410:
[I]t is well-settled that police officers do not need probable cause to arrest or reasonable suspicion for an investigatory stop every time they approach a citizen in public. State v. Britton, 93-1990 *582 (La.1/27/94), 633 So.2d 1208, 1209. A person's liberty and privacy are not violated when a police officer attempts to talk with him as long as that individual is free to disregard the questioning and walk away. State v. Burns, 95-1500, p. 7 (La.App. 4 Cir. 6/5/96), 675 So.2d 1233, 1237. Only when an individual is actually stopped without reasonable cause, or if such a stop is imminent, are his rights infringed. Id. While the Fourth Amendment protects individuals from actual stops, La. Const. art. 1, § 5 also protects individuals from "imminent actual stops." State v. Tucker, 626 So.2d 707 (La.1993), opinion reinstated on rehearing by 626 So.2d 720 (La.1993).
Prior to the time that she conducted a pat down search of Handy, Officer McCaskill had not actually stopped Handy, nor had she done anything to indicate that a stop was imminent. She had only asked him whether the lawnmower at the scene belonged to him. Police officers enjoy the same liberty possessed by every citizen to address questions to other persons. State v. Press, 99-2222 (La.App. 4 Cir. 4/19/00), 767 So.2d 56, 59. In Press, this Court cited with approval a Second Circuit decision wherein the court wrote:
The mere fact that police approach and address a person does not compel that individual to respond to the inquiries or comply with the requests. Legally, nothing prevents him from choosing not to answer and leaving the scene. State v. Neyrey, 383 So.2d 1222 (La.1979); State v. Desormeaux, 569 So.2d 283 (La. App. 2d Cir.1990). Despite the fact that unsolicited assistance, unasked-for conversation, and unrequested advice are not always welcome, the Constitution provides no protection against such everyday annoyances whether caused by a policeman or an ordinary citizen. State v. Neyrey, supra. Mere police questioning does not constitute a seizure. Florida v. Bostick, [501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991)] supra; I.N.S. v. Delgado, 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984).
State v. Press, 767 So.2d at 59, citing State v. Haygood, 26,102 (La.App. 2 Cir. 8/17/94), 641 So.2d 1074, 1077.
Application of the law to the facts herein indicates that Officer McCaskill's initiation of conversation with Handy was not an investigatory stop. Thus, Handy's contention that this "stop" was improper is without merit.
The record supports the district court's finding that Officer McCaskill's eventual detention and pat down search of Handy was proper. Specifically, Officer McCaskill's pat down search of Handy and the back pack he was wearing was based on: 1) her knowledge of shed burglaries in the area; 2) Handy's presence next to the lawnmower with a bicycle and attached dolly; 3) Handy's inability to identify the owner of the lawnmower; 3) Handy's explanation that the lawnmower was left for trash when there was no other trash around; 4) Handy's inability to provide identification or readily provide a name; and, 5) Handy's nervous and fidgety behavior.
This Court has held that flight, nervousness or a startled look at the sight of a police officer may be one of the factors leading to a finding of reasonable cause to stop under statute governing temporary questioning of persons in public places. State v. Vingle, XXXX-XXXX (La.App. 4 Cir. 11/21/01), 802 So.2d 887. In the present matter, Officer McCaskill testified that Handy "acted very nervous and fidgety" when asked about his purposes.
Further, an officer's knowledge of crime patterns in a given area can be one factor forming a basis to conduct an investigatory *583 stop. For example, see State v. Frosch, XXXX-XXXX (La.3/22/02), 816 So.2d 269, wherein the Supreme Court held that the police had reasonable suspicion for investigatory stop of a Handy, where police observed Handy looking into a truck and jiggling the door handle, at 11:50 p.m., in a neighborhood in which many cars had been stolen, and Handy attempted to flee upon noticing police. Officer McCaskill testified in the present matter that the area surrounding the scene of the crime had been experiencing lawn shed burglaries and lawn equipment thefts. Moreover, Officer McCaskill observed Handy bending over a lawnmower in the presence of a bicycle with a dolly.
Further, evasive answers to reasonable police questions can also be a factor forming the basis to conduct an investigatory stop. In State v. Richardson, XXXX-XXXX (La.App. 4 Cir. 2/7/01), 780 So.2d 1103, this Court affirmed an investigatory stop wherein the investigating officers testified that they observed Richardson standing next to a pile of clothes in an empty parking lot early in the morning. The officers further testified that when they approached Richardson he told them the clothes were not his and that he was "just taking a leak." Richardson, 780 So.2d at 1108. The officers further testified that the clothes had security tags and store labels on them. In affirming the denial of the motion to suppress this Court noted that one of the factors in support of the police officer's investigatory stop was Richardson's answers to police questions. The investigating officer was justified in stopping Richardson because his answers to routine questions were suspect in light of the surrounding circumstances.
The facts in the record support the district court's denial of Handy's motion to suppress. Furthermore, a trial judge's decision to deny a motion to suppress will be afforded great weight and will not be set aside unless to do so is clearly mandated by a preponderance of the evidence. State v. Lee, 545 So.2d 1163 (La.App. 4 Cir.1989).

DECREE
Accordingly, this Court affirms the conviction and sentence of Alvin Handy.
AFFIRMED.