hLOBRANO, Judge.
The defendant, James Parker, III, was charged by bill of information with possession of cocaine with intent to distribute, a violation of La. R.S. 40:967. A jury found him guilty as charged. The State filed a multiple bill of information, to which defendant pled guilty. He was found to be a second felony offender, and was sentenced to serve fifteen years at hard labor pursuant to La. R.S. 15:529.1. Defendant now appeals.
Officer Demetrius Jackson testified that on January 16, 1997, he was assigned to the First District Community Oriented Policing Unit (COPS) for the Lafitte Housing Devel *1067 opment. While on foot patrol at approximately 1:00 p.m., he and his partner, Wayne Jacques, observed several subjects sitting on a porch. Officer Jackson stated that it was routine procedure to identify subjects while in the housing project. After identifying three of the subjects, the officers proceeded to ascertain the defendant’s identity. Officer Jackson stated that when they first approached the defendant, his face became “rigid”, and he appeared to be “jittery and kind of scared.” They questioned him about why he was in that area of the ^project, an area known for drug activity. While questioning defendant, the officers observed a plastic bag in his mouth. The officers asked the defendant to remove the bag from his mouth. The defendant surrendered the bag that contained twenty-four rock-like substances that were later tested and found to be crack cocaine. The officers also retrieved $146.00 in currency from the defendant. Included in this amount were 101 one dollar bills and 9 five dollar bills. The defendant was arrested. The other three subjects were not arrested because they were not in possession of contraband and a check of their names in the motion computer showed that none of them were wanted on any charges. Officer Jackson warned these three subjects of the housing project rule prohibiting trespassing by non-residents unless they are “by a resident’s house and have permission to be there for some legal work (sic).”
On cross-examination, Officer Jackson stated that he did not see the defendant put anything in his mouth and that whatever was in his mouth was there before the officers approached the four subjects.
Officer Wayne Jacques, Jackson’s partner, testified that the function of the COPS unit is to weed out criminal activity within the housing developments. He corroborated the testimony of Officer Jackson about the events of January 16, 1997. Officer Jacques referred to this incident as a routine pedestrian stop in an area commonly known for narcotics trafficking. He added that the officers knew the defendant because of a previous arrest. A pat down search for weapons was conducted. He stated that as they interviewed the defendant during the routine bstop, a white, clear, plastic bag was observed in his mouth. The defendant was asked to remove the bag that was later tested and found to be crack cocaine. Officer Jacques also confirmed the seizure of $146.00 from the defendant.
On cross-examination, Officer Jacques stated that he did not see the four men do anything wrong before they were approached in the routine pedestrian stop. He also did not see the defendant or any of the other men put anything in his mouth. He said that when he asked the defendant for his name, he responded with his head turned and his speech sounding slurred. When Officer Jacques told defendant to face him while speaking, the defendant turned toward Jacques but tried to talk with his head down. Officer Jacques asked the defendant to raise his head and when he did so, the officer noticed the contraband in defendant’s mouth. The other three men were still present when the defendant was arrested but their names were not listed in the police report of this incident. Officer Jacques said the Lafitte housing project has a “no trespassing” rule that does not allow non-residents within the project unless they have a resident’s permission and are in the vicinity of that resident’s apartment.
Lashonda Lewis testified that she is the defendant’s girlfriend. She stated that on January 16, 1997, she happened upon the scene of defendant’s arrest and summarized what she saw as follows: “I seen one of the police officers, the short one, he was picking up something off the ground and he asked — they had like three dudes out there, James and two other dudes, and they said who was — ^whatever they had in their hand — who was it for, and no one answered so he just put James in the car and let the other two go.”
Lakiesha Parker, the defendant’s sister, testified that she was present when her brother was arrested on January 16, 1997. She corroborated Lashonda Lewis’ version of events. She claimed that the police officers arrived at the scene and summoned the three men, including defendant, to question them about something that the officers picked up off the ground. When the men said nothing, the officers randomly chose the defendant as *1068 the person to arrest and allowed the other two men to leave. She stated that these same officers frequently harassed her brother.
The defendant testified that on the day in question, he was chatting with two other men and his sister when he saw uniformed police officers drive by in a marked ear. The officers drove by the group a second time without stopping but on the third time they got out of their vehicle and informed the group that they were conducting a routine check. Everyone was searched and asked to empty their pockets and provide identification. According to defendant, the officers found the crack cocaine on the opposite side of the porch on which he was standing. Officer Jacques allegedly asked the group who the crack cocaine was for and no one said anything. The officers then counted the defendant’s money. The officers told the others to leave and told the defendant that he was being arrested for possession of crack cocaine. The defendant claims that he had an encounter with these same two officers less than a week before his cocaine arrest. He contends that one of the ^officers threatened to get him in trouble with the drug dealers in the neighborhood if he caused the police any more problems.
On cross-examination, the defendant stated that the crack cocaine was discovered on the grass next to the porch rather than on the porch itself. The defendant admitted that he had previous convictions for illegal carrying of a firearm, theft and possession of cocaine.
The State called Officer Jackson back to the stand as a rebuttal witness. Officer Jackson stated that when he arrived at the scene and approached the defendant and the other men, there were no women present. He remembered one woman arriving at the scene after the defendant had already been handcuffed. He said that woman identified herself as the defendant’s sister. Officer Jackson denied ever telling the defendant that he would get him in trouble with the neighborhood drug dealers. He reiterated that the crack cocaine was found in defendant’s mouth and not in the grass next to the nearby porch.
On appeal, the defendant argues that the trial court erred in finding that there was reasonable cause to stop and question him and that the evidence obtained as a result of that detention should have been suppressed. In State v. Sneed, 95-2326 (La.App. 4 Cir. 9/11/96), 680 So.2d 1237, writ denied, 96-2450 (La.3/7/97), 689 So.2d 1371, the standard to support an investigatory stop was set forth as follows:
An individual may be stopped and questioned by police if the officer has a reasonable suspicion that the person “is committing, has committed, or is about to commit an offense.” La.Code Crim. Proc. Ann. art. 215.1. While “reasonable suspicion” is something less than the probable cause needed for an arrest, it must be based upon particular articulable facts and circumstances known to the officer at the time the individual is ^approached. State v. Smith, 94-1502, p. 4 (La.App. 4th Cir. 1/19/95), 649 So.2d 1078, 1082. The officer’s past experience, training and common sense may be considered in determining if the inferences drawn from the facts' presented were reasonable. State v. Jackson, 26,138 (La.App. 2nd Cir. 8/17/94), 641 So.2d 1081, 1084.
We conclude that the facts of the instant case do not give rise to a reasonable suspicion, sufficient to justify an investigatory stop. There was no evidence that the officers had received any tips or complaints of narcotics activity, trespassing or any other criminal activity in the area. The officers repeatedly characterized this incident as a “routine pedestrian stop.” Officer Jacques admitted that he and his partner did not see the defendant or any of the other men doing anything wrong before they were stopped and asked to identify themselves. Both officers testified that they did not see the defendant put anything in his mouth. The defendant did not flee or attempt to flee when the officers approached.
The officers testified that the stop was made pursuant to a “rule” prohibiting persons from being in the Lafitte Housing Development without permission of a resident. Officer Jackson stated at the motion to suppress hearing that he and Officer Jacques had recently arrested the defendant and *1069 knew that he was not a resident of that project. However, the testimony of the officers does not indicate that they had reason to believe that the defendant did not have the permission of a resident to be in the project.
Because the exact provisions of the Lafitte Housing Development trespassing rule were never established in the record by way of testimony or otherwise, we cannot determine whether or not this rule was violated, or even that there is such a rule. We have been unable to find any trespassing statute or ordinance that applies exclusively to the public housing developments of the City |?of New Orleans and is more restrictive than the general trespassing laws. Thus, we hold that the mere fact that the defendant was in a housing development did not give the officers reasonable suspicion that he was committing, had committed or was about to commit a crime when the stop was initiated.
The officers also testified that defendant and the others were in an area known for drug activity. However, this fact, standing alone, is not sufficient to give rise to a reasonable suspicion justifying an investigatory stop. Furthermore, the mere fact that the defendant appeared “jittery and kind of scared” when the officers approached was not enough to justify the stop. Nervousness alone is insufficient to establish reasonable suspicion of possible criminal conduct. State v. Purvis, 96-787 (La.App. 3 Cir. 12/11/96), 684 So.2d 567.
Given the circumstances of this particular case, we find that the evidence was obtained as a result of an illegal detention of defendant and thus should have been suppressed. While the contraband was arguably in plain view after the stop was initiated, the officers had no reasonable suspicion to detain defendant, conduct any pat down search or question him. Accordingly, we grant the defendant’s motion to suppress the evidence. We reverse the defendant’s conviction and sentence. This matter is remanded to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.