EDWIN A. LOMBARD, Judge.
I,The defendant/appellant Darell James pleaded guilty to simple possession of crack cocaine, a violation of La.Rev.Stat. 40:967, but reserved the right to appeal the denial of his motion to suppress the evidence pursuant to State v. Crosby, 338 So.2d 584 (La.1976). After review of the record in light of the applicable law and arguments of the parties, we reverse the ruling of the trial court, vacate the appellant’s guilty plea and sentence, and remand the matter to the trial court for further proceedings.

Relevant Facts and Procedural History

The following facts are deduced from the August 11, 2005, motion hearing transcript. Four police officers, including Officers Robert Monlyn and Nakeisha Barnes, were on routine foot patrol through the Lafitte Housing Project shortly after noon on December 5, 2004, when they observed a group of men standing in the 600 block of N. Prieur Street, a block which is located entirely within the housing project. Disregarding the officers’ order to stop, the appellant walked out of the courtyard and into the street. Shortly thereafter, he was stopped on St. Ann Street by Officer Mon-lyn and frisked for weapons. As Officer Monlyn frisked the appellant, he felt a bulge in the appellant’s pocket and, as the appellant resisted the | J'risk, Officer Mon-lyn pushed him to the ground and handcuffed him. A subsequent search revealed a knife in one pocket and a plastic bag containing marijuana and crack cocaine in another pocket.
On cross-examination at the motion hearing, Officer Monlyn specifically stated that he did not observe the appellant engage in any illegal or suspicious behavior, that it was only the group’s presence in the project that elicited police interest, and that the group was approached solely to determine whether they were residents of *752 the project. Officer Monlyn became suspicious of the appellant only when he failed to heed the order to stop. Officer Monlyn also stated that he did not know what was in the bulge in the appellant’s pocket until after he searched the appellant after handcuffing him. Officer Monlyn stated that once the appellant was handcuffed while on the ground, he was under arrest for resisting arrest.
Officer Barnes also testified at the hearing, stating that the area was known for drug trafficking and illegal activity and that she wanted to conduct a field interview with the appellant to see if he had a reason to be in the project because she did not recognize him as a resident of the project. Officer Barnes testified that instead of stopping when ordered to by the approaching officers, the appellant walked out of the project. According to Officer Barnes, as Officer Monlyn followed the appellant down N. Prieur Street and across Orleans Avenue, the appellant attempted to flee and Officer Monlyn caught up with the appellant in the 800 block of N. Prieur, near the corner of St. Ann. On cross-examination, Officer Barnes specifically stated that she approached the men to see if they were trespassing in the project and that she would have issued them a summons if they were indeed trespassing even if they had no outstanding warrants or prior stops for trespassing. In addition, Officer Barnes stated that if any of the men had told her | ¡¡that he was visiting someone in the project, she would have walked the man to the apartment where he said he was going to verify his story.

Discussion

A review of the record reveals no patent errors. In his sole assignment of error, the appellant contends that the trial court erred by denying his motion to suppress the evidence. In this case, the question of whether the trial court erred in denying the appellant’s motion to suppress turns on two key factors: (1) whether the police officers had reasonable suspicion to make an investigatory stop; and (2) whether the police officers had probable cause to search the appellant.
In Louisiana, a police officer “may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.” La.Code Crim. Proc. art. 215.1(A); see also Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (the right to make such an investigatory stop must be based upon reasonable suspicion that the individual has committed, or is about to commit, an offense). Once a person is stopped pursuant to pursuant to Article 215.1, the officer may conduct a limited pat down frisk for weapons if he reasonably believes that he is in danger or that the suspect is armed. La.Code Crim. Proc. art. 215.1(B); see also United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (although the level of suspicion need not rise to the probable cause required for a lawful arrest, the police must articulate something more than an inchoate and unparticularized suspicion or hunch); State v. Kalie, 96-2650, p. 3 (La.9/19/97), 699 So.2d 879, 881 (to make a brief investigatory stop on less than probable cause to arrest, the police must have a particularized and objective basis for suspecting the particular person stopped of criminal activity).
|4In determining whether the police possessed the requisite minimal level of objective justification for an investigatory stop based on reasonable suspicion of criminal activity, reviewing courts look at the totality of the circumstances, allowing officers to make inferences from and de *753 ductions about the cumulative information available to them based on their own experience and specialized training. U.S. v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002); see also State v. Williams, 421 So.2d 874, 875 (La.1982) (to determine whether a reasonable, articula-ble suspicion existed, the court must weigh all of the circumstances known to the police at the time the stop was made). An officer’s past experience, training and common sense may be considered in determining if the inferences drawn from the facts were reasonable. State v. Parker, 97-1994, p. 6 (La.App. 4 Cir. 12/9/98), 723 So.2d 1066, 1068.
In this case, the State argued at the suppression hearing that the officers had reasonable suspicion to detain the appellant for trespassing because they did not recognize him as a resident of the housing project. The mere fact that the defendant was in the housing project does not mean he was trespassing, see Parker, 723 So.2d at 1069, and the State did not allude to any specific ordinance pertaining to criminal trespass in housing projects, any evidence of specific signage prohibiting nonresidents from entering the housing projects, or any criminal trespass statute or municipal ordinance pertaining to trespassing in a housing project.[1] The record contains a minute entry of November 6, 2006, ^indicating that the court recessed the matter to allow the State to produce a copy of a PANO[2] policy document pertinent to this matter,[3] but nothing in the record indicates that the State ever produced this document.
The State contends, however, that because the appellant “fled” when the officers called to him to stop and because the area is known for narcotics activity, the appellant’s actions gave the police reasonable suspicion to stop him. In support of this contention, the State directs this Court’s attention to State v. Johnson, 01-2081 (La.4/26/02), 815 So.2d 809, where the Louisiana Supreme Court upheld a finding of reasonable suspicion based upon the defendant’s nervousness, flight, reputation of an area, and the lateness of the hour.
Notwithstanding the Johnson decision, however, the State in this case presented no evidence which justified a finding of reasonable suspicion for the police to approach the appellant. Specifically, the police neither received any information that the appellant was engaged in any illegal *754 activity nor did they observe him engage in any illegal conduct. Additionally, the hour was not late and the appellant displayed no signs of nervousness upon observing the police. Finally, irrespective of whether he was a resident of the housing project or not, the appellant was not trespassing. Based upon these unrefuted facts, there was no reasonable suspicion for the police to approach the appellant initially.
| (¡However, even if this Court were to concede the existence of reasonable suspicion of criminal activity as a means of supporting an investigatory stop, this without more does not give the police the right to frisk the appellant under the circumstance herein. Rather, in addition to the reasonable suspicion supporting the investigatory stop, there must be some basis for a fear of safety or a fear the suspect is armed. State v. Jones, 99-0861, p. 12 (La.App. 4 Cir. 6/21/00), 769 So.2d 28, 38. “The officer need not be absolutely certain that the person is armed, but the officer must be warranted in his belief that his safety or that of others is in danger.” State v. Williams, 98-3059, p. 4 (La.App. 4 Cir. 3/3/99), 729 So.2d 142, 144, quoting State v. Smith, 94-1502 p. 5 (La.App. 4 Cir. 1/19/95), 649 So.2d 1078, 1082. In this case, there is no such evidence for Officer Monlyn testified that he frisked the appellant to see if he was carrying a weapon but did not state any basis for a belief that the appellant might be carrying a weapon.[4] Moreover, although Officer Monlyn’s testimony indicates that the drugs were discovered after the appellant was under arrest, this after the fact analysis is insufficient to satisfy 4th Amendment mandate that peo-pie are to be secure in their persons from unreasonable search and seizures.

Conclusion

The ruling of the trial court denying the motion to suppress the evidence is reversed, the appellant’s guilty plea and sentence are vacated, and the case is remanded to the trial court for further proceedings.
REVERSED AND REMANDED.
McKAY, J., dissents with reasons.

.Notably, the municipal ordinance concerning trespass, MSC 54 § 153, provides in pertinent part:
(a) No person shall without authorization intentionally enter any structure, watercraft, or moveable.
(b) No person shall intentionally enter immovable property owned by another:
(1) When he knows his entry is unauthorized; or
(2) Under circumstances where he reasonably should know his entry is unauthorized.
(c) It shall be an affirmative defense to a prosecution pursuant to subsection (2) of this section:
[[Image here]]
(2) To show that property was not adequately posted in accordance with subsections (d) or (e), and (f) of this section.

. It is unclear if the court meant HANO, the Housing Authority of New Orleans (the owner of the housing project), or PANO, the Police Association of New Orleans.

. La.Rev.Stat. 14:63, the general trespassing statute, provides in pertinent part:
A. No person shall enter any structure, watercraft, or movable owned by another without express, legal, or implied authorization.
B. No person shall enter upon immovable property owned by another without express, legal, or implied authorization.
C. No person shall remain in or upon property, movable or immovable, owned by another without express, legal, or implied authorization.

. This court has held that the fact that a defendant is suspected of engaging in drug activity gives an officer a reasonable basis for believing that the defendant might be armed, see State v. Craft, 2003-1852 (La.App. 4 Cir. 3/10/04), 870 So.2d 359, but there is no testimony in this case that the officers believed the appellant was engaged in narcotics activity.