JAMES F. McKAY III, Judge.
|,STATEMENT OF CASE
Delmon Marzett was charged by bill of information with possession of cocaine. On June 20, 2008, the trial court heard evidence and denied motions to suppress evidence and a statement. On April 20, 2009, Marzett entered a “Crosby”[1] plea and waived delays for sentencing. He received a five year sentence. For the following reasons we affirm the judgment of the trial court.
STATEMENT OF FACT
During the afternoon of February 19, 2008, Officer Robert Barrere and his partner, Officer Reno Bax, were working a paid detail at the Guste Housing Project. According to Officer Barrere, signs are posted on the property that state, in his words, “No Trespassing unless you’re with a HANO resident.” He explained the rule that one must be with a resident to be on Housing Authority of New Orleans (“HANO”) property. The officers were instructed by “management” to ensure that no one trespassed on HANO property. While in their vehicle, Officers Bar-rere and Bax saw Delmon Marzett walking up Erato Street in a northbound direction. At this vantage point Erato Street runs through the project, ^between the two main units. Although the two officers had worked at the project for over a year, they had never before seen the defendant. Officer Barrere, while in his police unit, signaled the defendant to approach. He then asked the defendant if he was a resident of the housing project to which he responded “no”. Officer Barrere testified that the defendant appeared to be nervous, was sweating profusely, and kept putting his hands in his pockets. The officer requested that the defendant remove his hands from his pockets, but he did not comply. Officers Barrere and Bax exited their vehicle and asked the defendant to put his hands on the vehicle. As Officer Barrere began patting the defendant down, the defendant turned belligerent, began screaming and “fighting” the officers. Officer Bax helped Officer Barrere restrain the defendant and placed the defendant in handcuffs.
Officer Barrere requested that the defendant produce identification, but the defendant did not have any on his person. The defendant admitted that he had eaten between six and twelve crack rocks. The officers then advised the defendant of his rights and arrested him for criminal trespass, drug incapacitation, and resisting an officer. Subsequent to advising the defendant of his rights, Officer Barrere searched the defendant and discovered a bag containing an off-white, rock-like substance, consistent with crack cocaine. Officer Barrere advised the defendant that an additional drug charge was being added to his arrest charges.
*1207 Officers Barrere and Bax then drove the defendant to the district station to procure a signature on an affidavit from their sergeant. When they arrived at the district station, they opened the back door of the vehicle “for him to get some air.” The defendant “fell out of the vehicle of his own accord.” As Officer Bax helped the defendant up, an additional bag of crack cocaine fell from the defendant’s right hand onto the ground.
[sThe defendant was then taken to University Hospital. While at the hospital the defendant informed the officers that he needed to use the restroom. As the defendant refused to be searched, the officers feared he might possess more contraband, and they asked the doctors to get a portable toilet. However, the defendant refused to use it. As the defendant retreated around a bed, a third bag of crack fell from his pant leg onto the bed. This bag was recovered.
In all, three bags, of what was believed to be crack cocaine, were recovered. Officer Barrere conducted a field test on the suspected contraband in the presence of his sergeant at the police station. The test was positive for crack cocaine.
Officer Reno Bax testified that he was working the detail with Officer Barrere.[2] According Officer Bax, “the sole purpose of that detail [was] to cut down on trespassing by non-residents and to provide a general police presence in the area.”
Officer Bax also testified that when they stopped the defendant, he was sweating excessively and could not keep still. Officer Barrere attempted to conduct a pat-down for officer safety, but the defendant “became immediately combative.” During the course of the patdown, Officer Bax noticed that defendant was trying to keep the front of his body close to the police car and was screaming. Officer Bax believed that this action was an indication that defendant was attempting to conceal something.
Officer Bax noted that originally he and Officer Barrere intended to interview the defendant and ask him to leave if he was not a resident. In order to continue the interview, they placed him in handcuffs, hoping to calm him down. Upon being asked for ^identification, the defendant denied having any. He also confessed to having swallowed anywhere from six to twelve rocks of crack cocaine. The defendant appeared very incoherent. At that point, the officers arrested him for criminal trespassing, resisting an officer, and “drug incapacitation due to his statement.”
When Officer Barrere proceeded to try to search the defendant he began struggling again, trying to keep his body close to the car. What appeared to be crack cocaine was recovered from the defendant’s zipper. At that point, the defendant was advised of his rights and the additional charge.
Due to the defendant’s admission to consuming crack cocaine, the officers wanted to take him to the hospital. However, they had to get a signature from their supervisor first, and they drove to the police station. While there, they attempted to give the defendant a chance to get some air. However, the defendant flung himself from the car. When the officers tried to pick the defendant up and place him back in the car, he became combative and shouted. At that point, the defendant “discarded” another plastic bag containing what appeared to be crack cocaine.
On the way to the hospital, the defendant continued being combative and loud, yelling and cursing at the hospital staff. The defendant also stated he needed to go *1208 to the restroom. Worried that the defendant might have more contraband on him, the officers requested a portable toilet. The defendant turned furious when the portable toilet was produced and stated that he no longer had to go. The defendant was asked to lie on a gurney, and he complied. As he lay down, another bag of what appeared to be crack cocaine rolled from his left pant leg and landed at the foot of the bed.
|r,On cross examination, Officer Bax testified that the defendant was stopped because it was illegal for him to be on HANO property if he was not a resident.
ERRORS PATENT
The record reveals no errors patent.
ASSIGNMENT OF ERROR
The defendant argues that the trial court erred in denying his motion to suppress the evidence because the initial stop was made without reasonable cause for a stop. He also argues that there was no reasonable suspicion for a pat down search. Finally, the defendant argues that there was no probable cause to arrest him for trespassing.
DISCUSSION

The stop/detention:

Pursuant to La.C.Cr.P. art. 215.1, “[a] law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.” See also Terry v. Ohio. 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (Investigatory stop must be based upon reasonable suspicion that the individual has committed, or is about to commit, an offense). “Reasonable suspicion” to stop is something less than probable cause for arrest; a reviewing court must look to the facts and circumstances of each case to determine whether a detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect’s rights. State v. Williams, 2007-0700, p. 11 (La.App. 4 Cir. 2/13/08) 977 So.2d 1101, 1111. In assessing the reasonableness of an investigatory stop, the court must balance the need for the stop against the invasion | sof privacy it entails and consider the totality of the circumstances in determining whether reasonable suspicion exists. Id. The detaining officers must have knowledge of specific articulable facts, which, if taken together with rational inferences from those facts, warrant the stop. Id. The officer’s past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable, and deference should be given to the experience of the officers present at the time of the incident. Id., 2007-0700 at p. 12, 977 So.2d at 1111.
Once a valid stop is made “and [the stopping officer] reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.” La.C.Cr.P. art. 215.1(B). To frisk a detainee, there must be some basis for a fear of safety or a fear the suspect is armed. State v. James, 2007-1104, p. 6 (La.App. 4 Cir. 3/5/08), 980 So.2d 750, 754. “The officer need not be absolutely certain that the person is armed, but the officer must be warranted in his belief that his safety or that of others is in danger.” Id., quoting State v. Smith, 94-1502, p. 5 (La.App. 4 Cir. 1/19/95), 649 So.2d 1078, 1082.
Trial court courts are vested with great discretion when ruling on a motion to suppress, and consequently, the ruling of a trial judge on a motion to suppress will not be disturbed absent an abuse of *1209 that discretion. State v. Long, 2003-2592, p. 5 (La.9/9/04), 884 So.2d 1176, 1179.
This Court has addressed stops in public housing projects numerous times. In State v. Parker, 97-1994, p. 6 (La.App. 4 Cir. 12/9/98) 723 So.2d 1066, 1068, the arresting officers testified that they initially approached the defendant | /‘pursuant to a ‘rule’ prohibiting persons from being in the Lafitte Housing Development without permission of a resident.” One of the arresting officers had recently arrested the defendant and knew that he was not a resident of the project. Id. However, this Court found that that the arresting officers did not have sufficient reasonable suspicion to justify an investigatory stop. Id., 97-1994 at p. 6, 723 So.2d at 1069. It reasoned:
Because the exact provisions of the Lafitte Housing Development trespassing rule were never established in the record by way of testimony or otherwise, we cannot determine whether or not this rule was violated, or even that there is such a rule.
Id. This Court also noted an inability to find any trespassing statute or ordinance that applied exclusively to public housing developments of the City of New Orleans that was more restrictive than general trespassing laws. Id. Therefore, this Court held, “that the mere fact that the defendant was in a housing development did not give rise to the officers reasonable suspicion that he was committing or was about to commit a crime when the stop was initiated,” Id.
In State v. Coleman, 2001-0112, p. 1 (La.App. 4 Cir. 7/11/01), 791 So.2d 780, 781, the defendant exited the Guste Housing Development and approached the officer who arrested her while he was conducting an investigation of another crime in the 1400 block of South Robertson Street. The arresting officer asked the defendant to identify herself. Id. 2001-0112, p. 2, 791 So.2d at 781. She gave the name “Kim Carter,” but had no identification. Id. Moreover, the defendant was not able to explain why she was in the area. Id. A computer check produced no results for “Kim Carter.” Id. The arresting officer testified that he arrested her for trespassing because, in his experience, a person of defendant’s age had identification and could generally be identified in the computer. Id. A search ^incident to this arrest produced contraband. Id. On cross examination, the officer testified that he did not know whether there were trespass postings at the housing development. Id. This Court found there was no probable cause for the trespass conviction, finding the case before it to be “almost identical” to the facts of State v. Walker, 32-342 (La.App. 2 Cir. 9/24/99), 747 So.2d 133. Id. 2001-0112, p. 6, 791 So.2d at 783. In Walker, the Second Circuit found that arresting officers did not have probable cause to arrest for trespass, which led to the discovery of drugs. Id. 2001-0112, p. 4, 791 So.2d at 782. This Court’s analysis of Walker pointed out that the Second Circuit “noted that the parking area was neither fenced nor posted with any sign prohibiting parking after business hours or trespassing.” 2001-0112, p. 5, 791 So.2d at 782-783.
Finally, in rejecting the legality of another stop for trespassing in the Lafitte Housing Project, this Court reasoned:
The mere fact that the defendant was in the housing project does not mean he was trespassing, see Parker, 723 So.2d at 1069, and the State did not allude to any specific ordinance pertaining to criminal trespass in housing projects, any evidence of specific signage prohibiting nonresidents from entering the housing projects, or any criminal trespass statute or municipal ordinance per *1210 taining to trespassing in a housing project. Emphasis added.
State v. James, 2007-1104, p. 4 (La.App. 4 Cir. 3/5/08), 980 So.2d 750, 753.
These three cases show that this Court has historically been reluctant to uphold the legality of stops for suspected trespassers in public housing projects. However, the defendant was not stopped for trespassing.
A police officer does not need probable cause for arrest or reasonable suspicion for an investigatory stop to approach a citizen in public. State v. Press, 99-2222, p. 3 (La.App. 4 Cir. 4/19/00), 767 So.2d 56, 59. No violation to a person’s liberty or privacy occurs when a police officer attempts to talk to him, as | along as that individual is free to disregard the questioning and walk away. Id. A person is “seized” for purposes of La. Const. Art. 1, Sec. 5, when he is either “actually stopped” or when an actual stop is “imminent.” State v. Bacuettes, 2000-1053, p. 5 (La.App. 4 Cir. 10/18/00), 772 So.2d 813, 815, citing State v. Belton, 441 So.2d 1195 (La.1983). In State v. Tucker, 626 So.2d 707, 711 (La.1993), the Louisiana Supreme Court adopted the U.S. Supreme Court’s definition of seizure under the Fourth Amendment to the U.S. Constitution as seizure under La. Const. Art. 1, Sec. 5, establishing that, “an individual is not seized ... until that individual either submits to a show of police authority or is physically contacted by the police.” Citing California v. Hodari D, 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991).
In State v. Press, this Court found that no stop occurred where an officer exited his vehicle and asked the defendant if he lived in the Iberville Housing Development. 99-2222 at p. 3, 767 So.2d at 59. The defendant there removed his hands from his pockets as the officer approached, and contraband fell out of his pockets in the process. Id.
In State v. Handy, 2005-0811 (La.App. 4 Cir. 1/18/06), 925 So.2d 577, this Court found that it was not a stop for an officer to approach a man bending over a lawnmower in a yard. The officer was aware of problems in the neighborhood with shed burglaries and theft of lawn equipment. 2005-0811 at p. 2, 925 So.2d at 579. This Court upheld a subsequent pat down search and search of the defendant’s backpack where the officer’s actions were based on the following:
1) her knowledge of the shed burglaries in the area; 2) Handy’s presence next to the lawnmower with a bicycle and attached dolly; 3) Handy’s inability to identify the owner of the lawnmower; 3) Handy’s explanation that the lawnmower was left for trash when there was no other trash around; 4) Handy’s inability to provide identification or readily provide a name; and 5) Handy’s nervous and fidgety behavior.
|10 2005-0811 at p. 8, 925 So.2d at 582.
This case is analogous to Handy. When Officer B arrere signaled to the defendant, it was analogous to approaching him to speak to him. It was not a forcible stop. Officers Barreré and Bax were both in their vehicle and were not demonstrating any force. Then, as in Handy, the defendant’s nervous behavior, and his refusal to remove his hands from his pockets, placed Officers Barreré and Bax in reasonable fear for their safety, justifying patting the defendant down to ensure he was not armed. Also as in Handy, the defendant’s detention began with the pat down. The reasonable suspicion for this detention, pursuant to La. C.Cr.P. art. 215.1, was not trespassing. The totality of circumstances at that point included the defendant’s apparent nervousness exhibited by his sweating. More im *1211 portantly and specifically, the defendant refused to remove his hands from his pockets, giving Officers Barrere and Bax reasonable suspicion that he might have a concealed weapon, in violation of La. R.S. 14:95(A)(l)(prohibiting carrying of a concealed firearm or other instrumentality customarily used as a dangerous instrumentality). The inherent danger of this situation justified the frisk for officer safety pursuant to La.C.Cr.P. art. 215.1.

The confession:

The defendant spontaneously admitted that he had consumed some six to twelve rocks of crack cocaine, after he denied having any identification. He also resisted the frisk to the point where he had to be restrained in handcuffs.
Generally,
“the prosecution may not use statements, whether exculpatory or incul-patory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural | n safeguards effective to secure the privilege against self-incrimination.”
Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (U.S.Ariz.1966). “Custodial interrogation” means “questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.” Id. Here, it is evident that the defendant was in custody when Officer Barrere began to pat him down. He was not free to go. However, spontaneous and voluntary statements, not given as a result of police interrogation or compelling influence, are admissible without Miranda warnings even if a defendant is in custody. State v. Robinson, 384 So.2d 332, 335 (La.1980). The defendant was asked only if he possessed identification. He was not being interrogated, when he spontaneously stated that he had consumed crack cocaine. Under these circumstances, the trial correctly denied the motion to suppress this confession.

Probable cause for arrest:

The defendant argues that there was no probable cause for arrest for trespassing, and therefore all of the subsequently seized evidence should not have been admitted. Whether or not probable cause existed for the defendant to be arrested for trespass need not be addressed because probable cause existed to arrest the defendant for a crime after he admitted to ingesting crack cocaine — the crime he was ultimately charged with — possession of crack cocaine, in violation of La. R.S. 40:967(0(2). Reason dictates that in order to ingest a drug, one must possess it. Moreover, by admitting to consuming the drug, the defendant provided probable cause that he possessed more of the drug. The defendant admits that evidence seized in a search incident to a lawful arrest is admissible. See State v. Wilson, 467 |12 So.2d 503, 517 (La.1985). Accordingly the defendant’s argument that there was no probable cause for his arrest has no merit.
CONCLUSION
No stop occurred when Officer Barrere initially signaled that he would like to speak to the defendant. During the brief conversation with the defendant, it became apparent that he might be armed, a violation of La. R.S. 14:95(A)(1), prohibiting the carrying of concealed weapons. The defendant’s nervous appearance and his refusal to remove his hands from his pockets placed Officers Barrere and Bax in reasonable fear for their safety, justifying a subsequent attempt to pat the defendant down for weapons. During the pat-down, the defendant spontaneously admitted that he *1212 had consumed crack cocaine, providing probable cause for his arrest for possession of crack cocaine. The subsequently-seized contraband was seized pursuant to lawful arrest and would have been admissible at trial.
Accordingly, we affirm the defendant’s conviction and sentence.
AFFIRMED.
BONIN, J., Concurs With Reasons.

. State v. Crosby, 338 So.2d 584 (La.1976).

. Officer Bax stated the detail was the Melpomene Housing Project.