EDWIN A. LOMBARD, Judge.
liThe defendant/appellant Derrick Mulder pleaded guilty to possession of heroin, a violation of La.Rev.Stat. 40:966(A)(1), but reserved his right to appeal the denial of his motion to suppress the evidence pursuant to State v. Crosby, 338 So.2d 584 (La. 1976). After review of the record in light of the applicable law and arguments of the parties, we reverse the ruling of the trial court, vacate the defendant’s guilty plea and sentence, and remand the matter to the trial court for further proceedings.

Relevant Facts and Procedural History

On August 3, 2010, the defendant was observed walking in the Iberville Housing Development by two police officers. The police officers got out of their police vehicle, told him to step to the hood of the vehicle and put his hands on the vehicle, and patted him down. The defendant did so, keeping his left hand clenched as he placed it on the vehicle. Upon being ordered to open his hand, the defendant was found to be holding a packet of heroin.
On August 9, 2010, the defendant was charged by bill of information with possession of heroin. His motion to suppress the evidence was denied on August 1 ⅞26, 2010, and November 16, 2010, he pleaded guilty, reserving his right to appeal pursuant to State v. Crosby, 338 So.2d 584 (La.1976).

Applicable Law

In Louisiana, a police officer “may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.” La.Code Crim. Proc. art. 215.1(A). In determining whether the police possessed *1244 the requisite minimal level of objective justification for an investigatory stop based on reasonable suspicion of criminal activity, reviewing courts look at the totality of the circumstances, allowing officers to make inferences from and deductions about the cumulative information available to them based on their own experience and specialized training. U.S. v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002); State v. James, 2007-1104, p. 3 (La.App. 4 Cir. 3/5/2008), 980 So.2d 750, 752; see also State y. Williams, 421 So.2d 874, 875 (La.1982) (to determine whether a reasonable, articulable suspicion existed, the court must weigh all of the circumstances known to the police at the time the stop was made). An officer’s past experience, training and common sense may be considered in determining if the inferences drawn from the facts were reasonable.

Discussion

In his sole assignment of error, the defendant argues that the trial court erred in denying his motion to suppress the evidence because the arresting officers lacked reasonable suspicion and/or probable cause to stop the defendant and conduct a weapons frisk.
The burden is on the State to establish admissibility of evidence seized without a warrant, La.Code Crim. Proc. art. 703(D), and a trial court judgment 1..¡relative to the suppression of evidence is afforded great weight and only set aside for an abuse of discretion. State v. Hunt, 2009-1589, p. 7 (La.12/1/2009), 25 So.3d 746, 752. The State presented the testimony of Office Lejean Jackson at the August 26, 2010, motion hearing. Officer Jackson testified that she and her partner, Officer Jonathan Sam, were sitting in their marked police unit in the Iberville Housing Development on the evening of August 3, 2010, when they saw the defendant walking in and around the area. As neither officer recognized him as a resident of the development, they got out of their police vehicle, told him to step to the hood of the vehicle, and patted him down. The defendant complied, but kept his left hand clenched as he placed it on top the unit. Officer Jackson ordered him to open his left hand and saw him discard a small foil packet. After confiscating the packet and opening it to find a “tan powder substance,” Officer Jackson advised him of his Miranda rights.
On cross-examination, Officer Lejean stated that she had been a member of the New Orleans Police Department (NOPD) for approximately one year and assigned to the Iberville Housing Development for approximately two months at the time of the defendant’s arrest. She stated that because she did not recognize the defendant as a resident of the housing development when she saw him walking through it, she conducted the stop to determine if he was trespassing. She conceded that, upon being ordered to stop, the defendant immediately submitted to her authority. Accordingly, the police officer ordered the defendant to place his hands on the police car so that she could “pat him down to make sure he didn’t have any weapons on him.” When asked what independent facts and circumstances led her to suspect that the defendant was armed and dangerous, Officer Lejean replied: “It is by policy. I must — If I stop a person, I need to pat them down. I did |4not search him. I patted him down to make sure he didn’t have anything to harm me or my partner.” (emphasis added). When defense counsel sought to clarify whose policy required a police officer to pat a person down upon stopping them, the State objected. The trial court sustained the objection, stating “It is NOPD policy.” The defense counsel argued that such a policy is clearly con *1245 trary to jurisprudence but the trial court responded, “I’ll sustain the objection.”
The State now argues to this court that the officers had reasonable suspicion to detain the defendant because they did not recognize him as a resident of the housing project and “reasonably suspected that the defendant was trespassing, and instead of arresting him on that suspicion they were investigating whether he was a resident.”
In Louisiana, a police officer “may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.” La.Code Crim. Proc. art. 215.1(A); see also Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)(the right to make such an investigatory stop must be based upon reasonable suspicion that the individual has committed, or is about to commit, an offense). Once a person is stopped pursuant to pursuant to Article 215.1, the officer may conduct a limited pat down frisk for weapons if he reasonably believes that he is in danger or that the suspect is armed. La. Code Crim. Proc. art. 215.1(B) (emphasis added); see also U.S. v. Sokolow, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (although the level of suspicion need not rise to the probable cause required for a lawful arrest, the police must articulate something more than an inchoate and un-particularized suspicion or hunch); State v. Kalie, 96-2650, p. 3 (La.9/19/97), 699 So.2d 879, 881 (to make a brief investigatory stop on less than probable cause to arrest, the police must have a ^particularized and objective basis for suspecting the particular person stopped of criminal activity).
The mere fact that the defendant was walking through the housing development does not constitute trespassing. In State v. Parker, 97-1994, (La.App. 4 Cir. 12/9/98), 723 So.2d 1066, this court addressed an investigatory stop in a public housing project, similar to the one at bar. In that case, the arresting officers testified that they initially approached the defendant “pursuant to a ‘rule’ prohibiting persons from being in the Lafitte Housing Development without permission of a resident.” One of the arresting officers had recently arrested the defendant and knew that he was not a resident of the project. However, this court found that the arresting officers did not have sufficient reasonable suspicion to justify an investigatory stop, reasoning:
Because the exact provisions of the Lafitte Housing Development trespassing rule were never established in the record by way of testimony or otherwise, we cannot determine whether or not this rule was violated, or even that there is such a rule.
Parker, 97-1994 at p. 6, 723 So.2d at 1069. In addition, the court noted an inability to find any trespassing statute or ordinance that applied exclusively to public housing developments of the City of New Orleans that was more restrictive than the general trespassing laws and, as such, held “that the mere fact that the defendant was in a housing development did not give rise to the officers reasonable suspicion that he was committing or was about to commit a crime when the stop was initiated.” Id.
Similarly, in this case the State presented no evidence of any ordinance allowing only residents to enter a housing development, any evidence of specific signage prohibiting nonresidents from entering the housing development, or any | (¡criminal trespass statute or municipal ordinance pertaining to trespassing in a housing project. The State argues that the stop in this case was constitutional because the officers “reasonably suspected that the defendant was trespassing, and instead of *1246 arresting him on that suspicion, they were investigating whether he was a resident.” However, as indicated in Parker, determining whether a citizen is a resident does not constitute a reasonable suspicion pursuant to Article 215.1(A) that the person, ‘is committing, has committed, or is about to commit an offense.’
Moreover, even accepting arguendo that stopping a citizen to inquire as to his residency is acceptable pursuant to Article 215.1(A), a limited pat down frisk for weapons is permitted only when the officer reasonably believes that he is in danger or that the suspect is armed. La.Code Crim. Proc. art. 215.1(B); Sokolow, 490 U.S. at 7, 109 S.Ct. 1581. In this case, Officer Jackson’s testimony does not indicate that she or her partner felt any specific concern for their safety that would have justified even a frisk for weapons during an investigatory stop. See State v. Francis, 2010-1149 (La. App. 4 Cir. 2/16/11), 60 So.3d 703 (police officers lacked a sufficient basis to frisk the defendant subject to an investigatory stop when the sole apparent basis for the frisk was the officer’s stated practice of always frisking a subject under a certain set of circumstances). Rather, Officer Jackson candidly admitted that the decision to immediately order the defendant to put his hands on the hood of the police vehicle and pat him down was not based upon the specific circumstances with which she and her partner were confronted or that there was anything about this defendant or his actions which caused them to feel that it was necessary to do so at the outset of the investigatory stop, but rather that patting down a person upon stopping him “is by policy.”
|7A police officer’s testimony that it is a matter of routine or policy to stop and frisk a person every time there is an investigatory stop (and the trial court’s apparent acquiescence with the policy) is a matter of concern beyond the narrow confines of this case. See United Stated Justice Department, Investigation of the New Orleans Police Department (3/16/2011), p. 28 (NOPD written policies effectively gloss over the requirements, particularly the necessity of articulable facts, under Terry and, as the consequences of these “lapses with respect to training were evident in our interviews with officers who displayed a profound lack of understanding of the limits of Terry ”). Officer Jackson did not articulate a single factor from which the trial court or this court can determine that she had any safety concerns in this case, much less that her safety concern was objectively reasonable. Thus, the decision to immediately order the defendant to put his hands on the police vehicle and pat him down was a de facto arrest without probable cause and, as such, an unreasonable seizure in violation of the Fourth Amendment. The State contention that “a reasonable officer could conclude that an unfamiliar person walking through the housing development at 10:30 at night may be armed ...” (emphasis added) suggests that it unnecessary for an officer to articulate reasons for a frisk during an investigatory detention. This, however, is contrary to both Louisiana jurisprudence and statutory authority which specifically holds that a lawful detention for questioning does not automatically give the officer authority to conduct a pat-down for weapons. See State v. Sims, 2002-2208 (La.6/27/2003), 851 So.2d 1039, 1043 (even after a lawful investigatory stop, a police officer may frisk the suspect only where a reasonably prudent person would be warranted in the belief that his safety or that of others is in danger); State v. Francis, supra; La.Code Crim. Proc. art. 215.1(B).
 |sThe threshold established for a protective frisk is not unduly burdensome. The reasonableness of a frisk is governed *1247 by an objective standard, Sims, supra; State v. Dumas, 2000-0862, pp. 2-8 (La.5/4/2001), 786 So.2d 80, and requires only that an officer establish a “substantial possibility” of danger existed, not that it was more probable than not that the detained individual was armed and dangerous. Sims, supra; State v. Hunter, 875 So.2d 99, 102 (La.1979). Even under this lenient standard, however, an officer must articulate some facts that led him to believe that the individual was armed and dangerous to justify a frisk. Sims, supra; Hunter, 375 So.2d at 101.
Moreover, we are a court of record. Whereas the State suggests that an officer “could conclude that an unfamiliar person walking through the housing development ... may be armed ...,” this court cannot impute its own rationale into the record to supplement or override the clear statement of the testifying officer. See Investigation, supra, (Justice Department review of arrest reports to determine whether officers articulated sufficient facts to justify arrests, searches, or pat down, revealed serious gaps in police officers’ knowledge and ability to properly perceive and articulate reasonable suspicion and probable cause). Thus, if as Officer Lejean testified, the pat-down occurred while the defendant was merely being detained on an investigatory stop, the pat-down (without the articulation of some fact to justify the frisk) was clearly a transgression of constitutional and statutory boundaries.
If, of course, the officers had probable cause to arrest the defendant, the frisk was constitutional as a search incident to arrest. Again, the threshold established for a finding of probable cause is neither high nor novel. See Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964) (probable cause to arrest exists when the detaining office |flarticulable knowledge of particular facts sufficient to reasonably suspect that the detained person of criminal activity). The determination of whether probable cause for an arrest existed at the time of the pat-down is a “purely objective” determination that takes into account “all of the information known collectively to the law enforcement personnel involved in the investigation.” State v. Elliott, 2009-1727 (La.3/16/2010), 35 So.3d 247, 251 (citation and internal quotation marks omitted); see also State v. Finklea, 313 So.2d 224 (La.1975) (whether probable cause existed at the time of the arrest must be determined without regard to the result of the subsequent search). In this case, however, Officer Jackson insisted that the only reason for stopping the defendant was to check his residency and, in its appellate brief, the State specifically asserts that instead of arresting the defendant “on suspicion of trespassing, they were investigating whether he was a resident.” Accordingly, because there is no evidence that being a non-resident of a housing development is a criminal offense, there was no probable cause for an arrest and the search was unconstitutional.

Conclusion

The trial court abused its discretion in denying the defendant’s motion to suppress. Accordingly, we reverse the trial court judgment denying the defendant’s motion to suppress, vacate the defendant’s conviction and sentence, and remand the matter back to the district court for further proceedings.
JUDGMENT REVERSED; CONVICTION AND SENTENCE VACATED; REMANDED.