JOY COSSICH LOBRANO, Judge.
| ,The defendant, Phillip Lampton, was charged by bill of information on July 12, 2010, with possession of cocaine, a violation of La. R.S. 40:967(C). On July 26, 2010, he pleaded not guilty. On August 20, 2010, a hearing on the motions was held, and the trial court found probable cause and denied the defendant?s motion to suppress the evidence. On August 27, 2010, the court allowed defense counsel to reopen the motions. On September 16, 2010, the trial court again found probable cause and denied the motion to suppress the evidence. Trial was set for September 28, 2010. On that date, the defendant withdrew his plea of not guilty, and pleaded guilty under State v. Crosby, 338 So.2d 584 (La.1976). The defendant waived delays, and on September 28, 2010, the trial court sentenced him to two years at hard labor, suspended, with two years of active probation. The defendant was also ordered to pay $800.00 to the Judicial Expense Fund.
AUGUST 20, 2010 HEARING ON THE MOTIONS
At this hearing, Officer Jimmy Peak testified that on June 1, 2010, he was working with Officer Jonathan Sam. He stated that they were proactively patrolling in the Iberville Housing Development, which is known for high crime rates and drug trafficking. The officer said that they observed an unidentified 12black male walking in the 1300 block of Bienville Street in New Orleans, which he testified was in the housing development. He stated that nearly every building in the development had a “No Trespassing” sign. Officer Peak said that he and Officer Sam were familiar with most of the residents of the development, and because neither of them recognized the defendant as a resident of the development, they stopped him in the 1200 block of Bienville Street as he walked out of the housing development. Officer Peak testified that they asked the defendant for identification, and he presented identification that indicated he did not live in the housing development. At that time, the defendant was arrested for trespassing. During a search conducted incident to the defendant’s arrest, they observed a bulge in his right sock. The item recov *1201 ered from the sock appeared to be crack cocaine. A field test was positive for crack cocaine.
On cross-examination, Officer Peak testified that he had been assigned to C.O.P.S.[1] for a month or two at the time that the defendant was arrested. The officer said that he had been an NOPD officer for two years. The officer said that he had spoken to the majority of residents within that time, but did not know how many people lived in the development. Officer Peak stated that his partner, Officer Sam, had been assigned to the Iberville Development longer than he had worked there. The officer said that he was not familiar with the defendant and that was the reason that he made the stop. Officer Peak justified the stop by stating that the block that he was coming out of was known for drug trafficking, almost all of the buildings in the housing development had “No Trespassing” signs, and neither he nor his partner was familiar with the defendant.
J^SEPTEMBER 16, 2011 REOPENED HEARING ON THE MOTIONS
At this hearing, Officer Jonathan Sam testified that he and Officer Peak were proactively patrolling in the Iberville Housing Development on June 1, 2010. He had been working in that area for eight or nine months, and stated that he knew the majority of the residents in the development. Officer Sam stated that the reason he and Officer Peak stopped the defendant was because they did not think he was a resident of the development, and they suspected that he was trespassing. The officer testified that he had no independent knowledge that the defendant did not live in the housing development.
Officer Sam said that he and Officer Peak approached the defendant as he exited the 1300 block of Bienville (within the housing development), and asked him if he lived in the development. The defendant produced identification indicating that he did not live within the housing development. Officer Sam noted that nearly every building in the development had a “No Trespassing” sign, and that it is common for non-residents to enter Iberville Housing Development to buy drugs. He also stated that every tenant’s lease in this development includes a provision requiring tenants to accompany their guests until they leave the development. The State did not offer into evidence a copy of the lease referred to by Officer Sam.
On cross-examination, Officer Sam acknowledged that the area where they stopped the defendant, in the 1200 block of Bienville Street almost to Basin Street, was on the outskirts of the housing development, but stated that he and Officer Peak saw the defendant coming out of the courtyard within the development prior to the stop. Officer Sam testified that the defendant produced a valid ID when asked, but the ID showed an address not within the housing development.
|4Prior to the defendant’s arrest for trespassing, the officers conducted a brief pat down for officer safety. After the arrest, the officers noticed that the defendant kept moving his body so that the officers could not check his right side. The defendant continued to do this even after Officer Peak asked him to stop moving. At that time, the officers conducted a full search incident to arrest, and discovered crack cocaine in defendant’s right sock.
The trial court found probable cause for the defendant’s arrest, noting that the officers had the right to investigate possible criminal activity that they believed had been committed or was about to be com *1202 mitted. The trial court also denied the defendant’s motion to suppress the evidence.
In the defendant’s first assignment of error, he argues that the trial court erred in denying his motion to suppress the evidence. Specifically, the defendant argues that the police officers did not have reasonable suspicion to stop him. The officers’ testimony indicated that they stopped the defendant because they did not recognize him as a resident of the Iberville Housing Development, and suspected him of trespassing. The defendant argues that the officers then illegally arrested him for trespassing, and in a search incident to that arrest, the officers found a small amount of cocaine in his sock. The defendant argues that the cocaine was seized pursuant to an illegal search, and should have been suppressed.
The State argues that the police officers had reasonable suspicion to stop the defendant, and during that stop, the officers learned information that led them to believe that the defendant had committed a crime, criminal trespass, in their presence. The State claims that the search incident to that arrest was legal, and the trial court properly denied the motion to suppress the evidence.
Un the defendant’s reply brief, he argues that the fact that he was walking down the street on the fringes of the Iber-ville Housing Development did not amount to committing trespass. He therefore argues that the search incident to his arrest for trespassing was illegal.
The State has the burden of proving the admissibility of all evidence seized without a warrant. La.C.Cr.P. art. 703(D).
Trial courts are vested with great discretion when ruling on a motion to suppress and, consequently, the ruling of a trial judge on a motion to suppress will not be disturbed absent an abuse of that discretion. State v. Long, 2008-2592, p. 5 (La.9/9/04), 884 So.2d 1176, 1179 (citations omitted); State v. Oliver, 99-1585, p. 4 (La.App. 4 Cir. 9/22/99), 752 So.2d 911, 914 (trial court vested with great discretion when ruling on a motion to suppress). The district court’s findings of fact on a motion to suppress are reviewed under a clearly erroneous standard and the district court’s ultimate determination of Fourth Amendment reasonableness is reviewed de novo. State v. Pham, 2001-2199 (La.App. [4 Cir.] 1/22/03), 839 So.2d 214, 218. Accordingly, “on mixed questions of law and fact, the appellate court reviews the underlying facts on an abuse of discretion standard, but reviews conclusions to be drawn from those facts de novo.” Id. (citation omitted). “Where the facts are not in dispute, the reviewing court must consider whether the trial court came to the proper legal determination under the undisputed facts.” Id. (citation omitted).
State v. Anderson, 2006-1031, p. 2 (La. App. 4 Cir. 1/17/07), 949 So.2d 544, 546. See also State v. Wells, 2008-2262, p. 5 (La.7/6/10), 45 So.3d 577, 581.
This Court recently set forth the law regarding investigatory stops in State v. Harveston, 2010-1402, p. 7 (La.App. 4 Cir. 5/11/11), 71 So.3d 954, 957, as follows:
La. C. Cr. P. art. 215.1(A) codifies the U.S. Supreme Court’s authorization of stops based on reasonable suspicion set forth in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and provides:
A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense |6and may demand of him his *1203 name, address, and an explanation of his actions.
“Reasonable suspicion” to stop is something less than probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether a detaining officer had sufficient facts within his or her knowledge to justify an infringement of the suspect’s rights. State v. Jones, 99-0861, p. 10 (La.App. 4 Cir. 6/21/00), 769 So.2d 28, 36-87.
This Court in State v. Marzett, 2009-1080, pp. 6-7 (La.App. 4 Cir. 6/9/10), 40 So.3d 1204, 1209, discussed four prior cases involving investigatory stops of defendants in housing developments:
This Court has addressed stops in public housing projects numerous times. In State v. Parker, 97-1994, p. 6 (La. App. 4 Cir. 12/9/98), 723 So.2d 1066, 1068, the arresting officers testified that they initially approached the defendant “pursuant to a ‘rule’ prohibiting persons from being in the Lafitte Housing Development without permission of a resident.” One of the arresting officers had recently arrested the defendant and knew that he was not a resident of the project. Id. However, this Court found that the arresting officers did not have sufficient reasonable suspicion to justify an investigatory stop. Id., 97-1994 at p. 6, 723 So.2d at 1069. It reasoned:
Because the exact provisions of the Lafitte Housing Development trespassing rule were never established in the record by way of testimony or otherwise, we cannot determine whether or not this rule was violated, or even that there is such a rule.
Id. This Court also noted an inability to find any trespassing statute or ordinance that applied exclusively to public housing developments of the City of New Orleans that was more restrictive than general trespassing laws. Id. Therefore, this Court held, “that the mere fact that the defendant was in a housing development did not give rise to the officers [sic] reasonable suspicion that he was committing or was about to commit a crime when the stop was initiated.” Id.
In State v. Coleman, 2001-0112, p. 1 (La.App. 4 Cir. 7/11/01), 791 So.2d 780, 781, the defendant exited the Guste Housing Development and approached the officer who arrested her while he was conducting an investigation of another crime in the 1400 block of South Robertson Street. The arresting officer asked the defendant to identify herself. Id. 2001-0112, p. 2, 791 So.2d at 781. She gave the name [ 7“Kim Carter,” but had no identification. Id. Moreover, the defendant was not able to explain why she was in the area. Id. A computer check produced no results for “Kim Carter.” Id. The arresting officer testified that he arrested her for trespassing because, in his experience, a person of defendant’s age had identification and could generally be identified in the computer. Id. A search incident to this arrest produced contraband. Id. On cross examination, the officer testified that he did not know whether there were trespass postings at the housing development. Id. This Court found there was no probable cause for the trespass conviction, finding the case before it to be “almost identical” to the facts of State v. Walker, 32-342 (La.App. 2 Cir. 9/24/99), 747 So.2d 133. Id. 2001-0112, p. 6, 791 So.2d at 783. In Walker, the Second Circuit found that arresting officers did not have probable cause to arrest for trespass, which led to the discovery of drugs. Id. 2001-0112, p. 4, 791 So.2d at 782. This Court’s analysis of Walker pointed out that the Second *1204 Circuit “noted that the parking area was neither fenced nor posted with any sign prohibiting parking after business hours or trespassing.” 2001-0112, p. 5, 791 So.2d at 782-783.
Finally, in rejecting the legality of another stop for trespassing in the Lafitte Housing Project, this Court reasoned:
The mere fact that the defendant was in the housing project does not mean he was trespassing, see Parker, 723 So.2d at 1069, and the State did not allude to any specific ordinance pertaining to criminal trespass in housing projects, any evidence of specific signage prohibiting nonresidents from entering the housing projects, or any criminal trespass statute or municipal ordinance pertaining to trespassing in a housing project. Emphasis added.
State v. James, 2007-1104, p. 4 (La.App. 4 Cir. 3/5/08), 980 So.2d 750, 753.
Marzett, 2009-1080, pp. 6-8, 40 So.3d at 1209-10.
In State v. Mulder, 2011-0424 (La.App. 4 Cir. 10/19/11), 76 So.3d 1241, writ denied, 2011-2511 (La.12/1/11), 76 So.3d 1160, this Court was recently faced with a case involving a defendant who was stopped and arrested as he was walking through a housing development. In Mulder, an NOPD officer testified that she and her partner were sitting in their marked police unit in the Iberville Housing Development when they saw the defendant walking in and around the area. As ^neither officer recognized him as a resident of the development, they exited their car, told the defendant to step to the hood of the vehicle, and patted him down. The defendant complied, but kept his left hand clenched as he placed it on top of the ear. The officer ordered the defendant to open his left hand and saw him discard a small foil packet. After confiscating the packet and opening it to find a tan powdery substance, the officer advised the defendant of his Miranda rights.
In finding that the police did not have reasonable suspicion to conduct an investigatory stop, this Court rejected the State’s argument that the officers had reasonable suspicion to detain the defendant because they did not recognize him as a resident of the housing project and “reasonably suspected that the defendant was trespassing, and instead of arresting him on that suspicion they were investigating whether he was a resident.” Citing the holding in State v. Parker, 97-1994 (La.App. 4 Cir. 12/9/98), 723 So.2d 1066, that “the mere fact that the defendant was in a housing development did not give rise to the officers [sic] reasonable suspicion that he was committing or was about to commit a crime when the stop was initiated,” the Mulder court also stated that the case before it was similar to State v. Parker, supra, in that “the State presented no evidence of any ordinance allowing only residents to enter a housing development, any evidence of specific signage prohibiting nonresidents from entering the housing development, or any criminal trespass statute or municipal ordinance pertaining to trespassing in a housing project.” State v. Mulder, supra.
Considering the facts of this particular case, and the jurisprudence discussed above, we find that the trial court erred in finding that the officers had probable | flcause to arrest the defendant for trespassing.[2] The State did not produce suffi *1205 cient evidence as to any specific trespassing rule relating to the Iberville Housing Development, or any other housing development in New Orleans, that prohibited a person from walking through the development when that person is a nonresident of the development and not accompanied by a resident of the development. Both officers referenced “No Trespassing” signs on most of the buildings in the development, but neither officer provided testimony as to the specific language on the “No Trespassing” signs. Officer Sam testified that every tenant of the development signs a lease, which includes a clause requiring that tenants escort their guests off of the property. But no such lease was offered into evidence by the State. Therefore, the State did not establish the exact provisions of such a rule.
In light of the cases cited above, particularly State v. Mulder, 2011-0424 (La.App. 4 Cir. 10/19/11), 76 So.3d 1241, writ denied, 2011-2511 (La.12/1/11), 76 So.3d 1160, and State v. Parker, 97-1994 (La.App. 4 Cir. 12/9/98) 723 So.2d 1066, we conclude that the defendant’s arrest for trespassing was illegal. Although the officers did not violate the defendant’s Fourth Amendment rights when they approached him and asked for his identification[3], the officers did not have probable cause to arrest the defendant for trespassing. Because the defendant’s arrest was illegal, the search conducted incident to that arrest was also illegal.
hnFor the reasons stated above, we find that the trial court erred in finding probable cause for the defendant’s arrest, and in denying the defendant’s motion to suppress the evidence seized in the search conducted incident to the arrest. The defendant’s conviction and sentence are hereby reversed.
REVERSED

. Community Oriented Policing Squad.

. La. R.S. 14:63 provides in pertinent part:
A. No person shall enter any structure, watercraft, or movable owned by another without express, legal, or implied authorization.
*1205 B. No person shall enter upon immovable property owned by another without express, legal, or implied authorization.
C. No person shall remain in or Upon property, movable or immovable, owned by another without express, legal, or implied authorization.
D. It shall be an affirmative defense to a prosecution for a violation of Subsection A, B, or C of this Section, that the accused had express, legal, or implied authority to be in the movable or on the immovable property.

. The Louisiana Supreme Court in State v. Fisher, 97-1133 (La.9/9/98), 720 So.2d 1179, 1183, citing United States v. Watson, 953 F.2d 895 (5th Cir.1992), stated, "mere communications between officers and citizens implicate no Fourth Amendment concerns where there is no coercion or detention.”